## COPPOLA *v.* UNITED STATES.

No. 153.   Argued March 27, 1961.—Decided April 17, 1961.

*William B. Mahoney* argued the cause and filed a brief for petitioner.

*Howard A. Heffron* argued the cause for the United States.   On the briefs were former *Solicitor General Rankin, Solicitor General Cox, Assistant Attorney General Wilkey, Assistant Attorney General Miller* and *Philip R. Monahan.*

PER CURIAM.

We brought this case here, 364 U. S. 813, believing that it presented a question under *Anderson* v. *United States,* 318 U. S. 350.   After hearing oral argument and fully examining the transcript of the proceedings in the trial court, we conclude that the particular facts of the case are not ruled by *Anderson.*   We find no merit in the other argument advanced by the petitioner.

*Affirmed.*

MR. JUSTICE DOUGLAS, dissenting.

Petitioner has been convicted of participating in two different bank robberies in violation of 18 U. S. C. § 2113. In each case petitioner's confessions obtained by agents

of the F. B. I. were admitted against him. These confessions were made during an interrogation taking place in the Buffalo police headquarters while petitioner was under detention by local police.

Petitioner was no stranger to the F. B. I. One of the bank robberies charged against petitioner occurred in February 1956, the other in October of that year. The F. B. I. had first come into contact with petitioner when, at their request, he re-enacted the events of the first robbery before an audience of its victims. Apparently nothing came of this investigation. Then—almost a year later—the F. B. I. came into possession of information that petitioner was involved in an unrelated state crime. This information was relayed to the Buffalo police and put into motion the events which led to petitioner's detention, his interrogation, and his being charged with these federal crimes. He was arrested by the local police on a charge of violation of the state law at about 9:30 in the morning. The Buffalo police, who had arrested him, had interrogated him during the day. But they made no attempt to have a prompt commitment hearing that was required by New York law.[1]

The F. B. I. had been informed of petitioner's arrest about noon of the day of his arrest. At nine in the evening of that day they received permission to interrogate petitioner as to his involvement in the two robberies. From nine in the evening until almost one o'clock in the morning of the next day, they carried on their interrogation, while state officials left them alone with petitioner "as a matter of courtesy." It was during this period that petitioner confessed to participation in both crimes. The next day, the federal officers officially "requested custody" of petitioner, so that he could be

---

[1] N. Y. Code Crim. Proc. § 165. See *People* v. *Lovello,* 1 N. Y. 2d 436, 438, 136 N. E. 2d 483, on whose authority the Government concedes the illegality of the detention under state law.

arraigned on the federal charges. There was some delay before he was given into federal "custody," for the local police had to see to his commitment under the state charges. Shortly after two o'clock in the afternoon he was arraigned on the state charges in the Buffalo City Court. At four in the afternoon, about 19 hours after the federal agents had commenced their interrogation, petitioner was arraigned in the federal court. There has been much attention focused, in the progress of this case, on whether the Buffalo police and the F. B. I. had a "working arrangement" (see *Anderson* v. *United States*, 318 U. S. 350, 356) by which petitioner's detention was effected. In my view, the activity of the federal agents in this case is proscribed without regard to whether there was, or was not, a pre-existing "working arrangement."

The confessions would be inadmissible in the case now before us if the original arrest in this case had been made by federal officers. For the duty of a federal officer making an arrest is to take the arrested person "without unnecessary delay" before a judicial officer for a hearing in compliance with Rule 5 (a), Fed. Rules Crim. Proc. Here the petitioner was detained for 29 hours without seeing a judicial officer of any sort; and for 19 of these hours he was under the visitation of federal officers. There was no effort to arraign the accused during that time. The federal officers took no steps to do it themselves; nor did they insist that the state police make the arraignment before a state judge as required by state law. There was also no showing that magistrates were unavailable.[2] I think it plain therefore that the 19-hour detention was an "unnecessary delay" within the meaning of Rule 5 (a).

[2] There is some suggestion that a state magistrate was not available after five o'clock in the afternoon. Cf. N. Y. Code Crim. Proc. § 165. But there is no suggestion that a federal magistrate was not available.

Arrest, and the resulting detention, serves, under the Federal Rules, the purpose of assuring that a person, accused on probable grounds of a crime, will be amenable to the orders of a competent court, which include by the terms of Rule 5 (b) the right to counsel and to bail. It is not an administrative step preliminary to a secret interrogation. In *Mallory* v. *United States*, 354 U. S. 449, 454, this Court said that an accused "is not to be taken to police headquarters in order to carry out a process of inquiry . . . ." In that case the accused was arrested at 2:30 p. m. and his questioning began about 8 p. m. By 10 p. m. he confessed, at which time the federal agents tried, without success, to reach a federal magistrate. Between 11:30 p. m. and midnight, petitioner dictated his confession to a typist; and he was not arraigned until the next morning.

The only reason put forward for a different result in this case is that the "police headquarters" in which federal agents carried out the wrongful "process of inquiry" belonged to Buffalo police rather than the Federal Government. The Government contends here, as it did in *Anderson* v. *United States, supra,* 356, that it is not "formally guilty of illegal conduct." The device is too transparent. I do not think that federal agents can avoid the impact of federal rules by taking advantage of an illegal detention arranged by state officers. Rule 5 (a) is not a formality; its purpose is to minimize secret police interrogation of persons under detention; its ultimate aim is to avoid those situations out of which grows the whole system of the "third degree." The evil at which the rule aims is in interrogation in secret and in detention before the arraignment. Its means are arraignment "without unnecessary delay." Here, the federal agents carried on the kind of interrogation against which Rule 5 (a) is aimed. The fact that the interrogation took place in the cell of a state police station rather than in the cell of a

federal jail or prison only accentuates the evasion of the Rule. In this case the federal agents used an illegal detention as the occasion to carry on a secret interrogation. What the federal agents cannot do in federal precincts they cannot do in a state jail. What we do today is to permit federal agents to flout the federal law so long as they let the accused stay in a state jail and interrogate him there to their hearts' content.