UNITED STATES of America
v.
**Orrin D. CONNELL.**
Cr. No. 63–33.

United States District Court
D. Massachusetts.
Feb. 1, 1963.

---

1. 195 F.Supp. 562 (W.D.Ark.).

742

W. Arthur Garrity, Jr., U. S. Atty., A. David Mazzone, Asst. U. S. Atty., Boston, Mass., for United States.

James C. Heigham, Boston, Mass. (Court Appointed), for defendant.

CAFFREY, District Judge.

Defendant Orrin D. Connell waived indictment and pleaded not guilty to an information charging him with violation of the Dyer Act, Title 18 United States Code § 2312. His counsel filed a motion to suppress a signed statement obtained from defendant by an agent of the FBI while he was in custody of the Boston Police on December 28, 1962.

After a hearing, at which testimony was given by a Boston Police patrolman, a Boston Police detective, and the FBI agent who obtained the statement, I find the following facts.

At about 4:30 p. m. on December 27, 1962, Officers Cooney and Brown, who were on patrol duty in a police cruiser in East Boston, stopped the defendant at the corner of Meridian and London Sts., East Boston, for operation of a motor vehicle at excessive speed. Upon questioning he was unable to produce a driver's license or registration for the automobile he was driving, which was a 1960 Red Chevrolet Convertible bearing New York registration plates, No. 1P6064. He told the officers that his father owned the car and that his father was a resident of New Hampshire.

The defendant was thereupon arrested on suspicion of larceny, taken to Station 7, East Boston, shortly after 4:30 p. m., and turned over to detectives for further interrogation. He was booked as a suspicious person, to wit: suspicion of larceny of a car reported stolen from Rome, New York, in a teletype bulletin issued by the Batavia, New York barracks of the New York State Police. The detective who interviewed the defendant for between one-half and three-quarters of an hour, confirmed the fact that the car had been reported as stolen by checking the New York Teletype Unit at about 5:00 p. m. on December 27.

It is the customary practice at Station 7 to hold persons arrested in late afternoon or early evening for arraignment in East Boston District Court the following morning, and pursuant to this practice defendant was brought from a cell in the police station to the Court between 9:30 and 9:45 a. m., Friday, December 28. On that day, the Court, Judge Augustus Loschi presiding, followed its usual procedure as to the order in which various types of criminal cases are called, and the defendant was arraigned between 10:30 and 11:00 a. m. He was arraigned on three old warrants filed May 1, 1962, charging him with three auto violations which allegedly occurred on January 23, 1962, namely, failing to slow down when approaching an intersection, failing to display number plates, and opening a muffler cut-out. The Court set bail at $1,000, which defendant did not post.

At approximately 5:00 p. m. on December 27, a detective attached to Station 7 notified the Boston office of the FBI that the defendant had been arrested driving an automobile which had been stolen in New York State. At

about 10:00 a. m. the next day, FBI Agent Bruno Wilson, a veteran of some 17 years service with the Bureau, was instructed by the FBI to proceed to Station 7. At some time between 11:00 and 11:30 a. m. he interviewed the defendant for a period not in excess of 30 minutes, having first advised the defendant as to his right to counsel, his right not to make a statement, and that if he voluntarily made a statement the statement might later be used against him in court. Although the defendant had been arraigned on the three charges indicated above, Agent Wilson had no knowledge of this.

After obtaining the defendant's statement Agent Wilson telephoned an Assistant United States Attorney who authorized the issuance of a Commissioner's complaint. Agent Wilson went before United States Commissioner Peter Nelligan and obtained the complaint about 12:00 noon on Friday, December 28. It was stipulated at the hearing that the defendant was brought before Commissioner Nelligan at 2:30 p. m. the same day.

Defendant's principal contentions are that his statement should be suppressed (1) because the Boston Police violated State law in detaining him an unreasonably long time before bringing him before Judge Loschi for arraignment, G.L. c. 276, sec. 20B, Commonwealth v. Banuchi, 335 Mass. 649, 141 N.E.2d 835 (1957); and (2) because, he says, by reason of a "working arrangement" between the FBI and the Boston Police, the Boston Police were, in effect, agents of the FBI to hold defendant until it became "convenient" for the FBI to interview him and obtain his statement, and that this did not occur until too long a time had elapsed. Anderson v. United States, 318 U.S. 350, 63 S.Ct. 599, 87 L.Ed. 829 (1943).

 Having in mind that the defendant was arrested at 4:30 p. m., that he was interviewed by a Boston Police detective for less than one hour, and that following the usual practice at Station 7 he was held overnight and arraigned the following morning in the local district court, being brought to the courtroom between 9:30 and 9:45 a. m., where his case was reached between 10:30 and 11:00 a. m. as a result of the Court's calling the various criminal cases on its docket for the day in the order it routinely follows, I rule that defendant has failed to establish that there was an unreasonable delay in his arraignment. Commonwealth v. DiStasio, 294 Mass. 273, 284, 1 N.E.2d 189 (1936).

Defendant likewise has failed to establish that the "working arrangement" between the Boston Police and the FBI was unreasonable or illegal. There is no evidence of any agency relationship under which the Boston Police held the defendant for the convenience of the FBI, and I find that the Boston Police were acting reasonably in notifying the Boston office of the FBI of the fact that information in their possession suggested that the defendant might have violated a Federal criminal law, to wit, the Dyer Act. See United States v. Coppola, 281 F.2d 340, 345 (2 Cir., 1960), aff'd. per curiam, 365 U.S. 762, 81 S.Ct. 884, 6 L.Ed.2d 79 (1961); Watts v. United States, 273 F.2d 10 (9 Cir., 1960), cert. den. 362 U.S. 982, 80 S.Ct. 1069, 4 L.Ed. 2d 1017 (1960).

Defendant does not and could not reasonably contend that upon being notified at 5:00 o'clock in the evening that the Boston Police were holding on State charges a possible violator of Federal law, the FBI was under any legal duty to interrupt the activities in which they were then engaged to speed an agent to forthwith interview the defendant. I rule that the FBI acted with reasonable promptness in sending Agent Wilson to interview the defendant the following morning. I further find that Agent Wilson did not interview or obtain a statement from defendant until after he had been arraigned and remanded to the custody of the Boston Police upon his failure to post the bond set by Judge Loschi. Agent Wilson's testimony, which I believe, that he advised the defendant of

his right to counsel and of his right not to make a statement, stands uncontradicted.

■ In summary, I find that the defendant's claim that the Boston Police detained him as *de facto* agents of the FBI is without substance. I further find that no unnecessary delay or physical or psychological coercion was exerted upon defendant to induce him to give to Agent Wilson the statement in issue. Consequently, I rule that no violation of defendant's rights under either State or Federal law occurred when Agent Wilson obtained the statement from defendant.

The motion to suppress is denied.