UNITED STATES of America

v.

Robert William GORMAN.

Crim. No. 11232.

United States District Court
D. Connecticut.

Jan. 29, 1965.

Jon O. Newman, U. S. Atty., Howard T. Owens, Asst. U. S. Atty., New Haven, Conn., for plaintiff.

Thomas D. Clifford, Jacobs, Jacobs, Jacobs & Jacobs, New Haven, Conn., for defendant.

ZAMPANO, District Judge.

Defendant, Robert William Gorman, moves, pursuant to Rule 41(e) of the Federal Rules of Criminal Procedure, to suppress certain evidence and statements obtained on September 8, 1964 and September 9, 1964 by police officers of the City of New York and agents of the Federal Bureau of Investigation. The government concedes the search and seizure took place without either a search warrant or an arrest warrant. Indictments for bank robbery, based on violations of 18 U.S.C. §§ 2113(a) and 2113 (b), were returned against Gorman and his co-defendant, Edward Roche, on September 18, 1964.

On September 8, 1964, at approximately 8:45 P.M., detectives assigned to the Narcotics Bureau of the City of New York observed Mrs. Sally Duffy and George LeBrecht, two known narcotic addicts, in company with Mrs. Duffy's young child, enter an automobile operated by Gorman. As Gorman's car drove away, the detectives followed in their vehicle. They observed Gorman's car stop momentarily near a water hydrant and then proceed to a narrow sidestreet adjacent to a vacant lot overgrown with tall weeds. The detectives parked approximately fifty feet away and kept the occupants under surveillance. Gorman was seen leaving the car, raising the hood, and on two occasions opening and closing the trunk of the automobile. Suspecting the occupants of the vehicle were using narcotics, the detectives approached from different positions to see "what was going on." Mrs. Duffy and her child were outside the car. Gorman was observed inside the car injecting himself in the left arm with a hypodermic needle and syringe. At this point, about 9:05 P.M., detective Cuomo advanced directly to the car, ordered the occupants to "stay where you are", reached into the car to remove the needle from Gorman's arm and then placed him under arrest. LeBrecht was also seen

injecting himself with a hypodermic needle, and he was arrested.

Gorman and LeBrecht were informed they were being arrested for a violation of "1747-d of the Penal Law", and Mrs. Duffy was told she was arrested for "acting in concert" with the other two men.

The interior of the car was immediately searched. Gorman was then directed to open the trunk of the vehicle in order to find out what he was "doing in there before." An attaché case, containing a .38 calibre Smith & Wesson Special and a large sum of money, was found in the trunk of the car.

Initially Gorman identified himself as "James Connor of Connor and Noel Surgical Instrument Company, Houston, Texas", but within minutes he changed his story and claimed the money came from a "burglary in Houston." He then offered the detectives $10,000 to "let me get out of here", which resulted in an additional charge of attempted bribery placed against him. Gorman was handcuffed, searched and brought to a police precinct station at approximately 9:30 P.M.

Upon arrival at police headquarters officer Malone advised Gorman he could make a phone call, but Gorman stated he didn't wish to call anyone. From 9:30 P.M. to 11:30 P.M. detectives, while counting the money totaling $26,-600, questioned the defendant and took his fingerprints. From 11:30 P.M. to 4:00 A.M. on September 9, 1964, Gorman was not interrogated but was in a detention cell awaiting the arrival of the "district attorney." When the "district attorney" arrived at approximately 4:00 A.M., he informed Gorman of his constitutional rights and proceeded to interview him until approximately 6:30 A.M.

Federal agents had been called into the case at approximately 4:30 A.M. and subsequently started to interrogate Gorman at about 6:30 A.M. At the outset the agents advised him of his right to remain silent, and, further, if he did say anything, it could possibly be used against him in a court of law. He was told he could call an attorney, his mother or father or any other relative, if he wished. Gorman expressly declined to use a phone made available to him. Gorman then related the circumstances of his arrest by the police and "admitted a federal violation." He refused to sign any written statements. The federal interview was completed at approximately 7:45 A.M., and he was removed by city detectives "for further processing."

At approximately 8:00 A.M., Gorman was taken from the police precinct to downtown Manhattan to be photographed. He was then brought to the Bronx Criminal Courthouse for arraignment at about 10:00 A.M. Due to the pressure of other court business on that day Gorman was not finally arraigned before the magistrate until 2:30 P.M. Thereafter he was taken into custody by federal agents on a commissioner's warrant, again informed of his rights, fingerprinted, photographed, placed in a line-up and arraigned before a United States Commissioner at approximately 4:00 P.M.

THE ARREST

▮▮▮▮ The validity of Gorman's arrest on September 8, 1964 is to be determined by reference to the law of the state of New York. Ker v. California, 374 U.S. 23, 37, 83 S.Ct. 1623, 10 L. Ed.2d 726 (1963); United States v. Di Re, 332 U.S. 581, 589, 68 S.Ct. 222, 92 L.Ed. 210 (1948). Under that law, a lawful arrest for a misdemeanor may be made if it is committed in the arresting officer's presence. N.Y.Code Crim. Proc. § 177. Detective Cuomo personally observed Gorman in possession of a hypodermic needle and syringe in violation of the New York Penal Law, McKinney's Consol. Laws, c. 40, § 1747-d and, therefore, there was unquestionably probable cause for Gorman's arrest. United

States v. Viale, 312 F.2d 595, 600 (2 Cir.1963).

## THE SEARCH AND SEIZURE

Immediately following Gorman's arrest, the officers searched the interior and trunk of his car. Defendant contends the search and seizure of the gun and money were illegal in the absence of a search warrant. Having made the arrest, Gorman argues, the detectives should have applied for and obtained a warrant before proceeding to search the automobile.

The rationale for upholding as reasonable a search incident to a lawful arrest is stated in Agnello v. United States, 269 U.S. 20, 30, 46 S.Ct. 4, 5, 70 L.Ed. 145 (1925):

> "The right without a search warrant contemporaneously to search persons lawfully arrested while committing crime and to search the place where the arrest is made in order to find and seize things connected with the crime as its fruits or as the means by which it was committed, as well as weapons and other things to effect an escape from custody is not to be doubted."

■■ Under the facts of the instant case the Court finds the search and seizure reasonable and valid. The commission of the crime occurred in the automobile. The contemporaneous search immediately following the arrest was an integral part of proper law-enforcement procedure to find and seize items connected with the crime. Having observed Gorman twice opening and closing the trunk of his car prior to the arrest, the officers' search of the trunk was not only reasonable but required. United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653 (1950); Harris v. United States, 331 U.S. 145, 67 S.Ct. 1098, 91 L.Ed. 1399 (1947); Abel v. United States, 362 U.S. 217, 80 S.Ct. 683, 4 L.Ed.2d 668 (1960); Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925); Rhodes v. United States, 224 F.2d 348 (5 Cir. 1955); United States v. Fortier, 207 F.Supp. 516 (D.C.Conn.1962).

## THE DETENTION

Gorman further moves for an order suppressing the use of any admissions obtained from him on September 8, 1964 and September 9, 1964 on the ground such admissions were made during an illegal detention by local and federal officers. Relying primarily on Mallory v. United States, 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479 (1957) and McNabb v. United States, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed 819 (1943), defendant contends there was an "unnecessary delay" in his arraignment, in violation of Rule 5(a) of the Federal Rules of Criminal Procedure.

■ At the outset it is noted defendant's reliance on the McNabb-Mallory rationale is misplaced. In the instant case Gorman was arrested by New York detectives on their own initiative and detained by them until the afternoon of September 9, 1964 without any suggestion or request by federal agents that they do so. The interrogation of Gorman by the F. B. I. at 6:30 A.M. on September 9, 1964 did not contribute to any delay in the arraignment. At all times when Gorman had contact with the federal agents prior to his arraignment in state court and at the time he first became a federal prisoner on the afternoon of September 9, 1964, he was, as indicated above, fully advised of his constitutional rights. No claim is made of an unreasonable delay in arraignment by the F. B. I. during the period between his release by the New York officers and his presentment before a United States Commissioner. There was no "working agreement" between the F. B. I. and the New York police under circumstances proscribed in Anderson v. United States, 318 U.S. 350, 63 S.Ct. 599, 87 L.Ed. 829 (1943) and, therefore, defendant's claims on this issue must fail on the authority of United States v. Coppola, 281 F.2d 340 (2 Cir.1960), affirmed

per curiam, 365 U.S. 762, 81 S.Ct. 884, 6 L.Ed.2d 79 (1961).

■■ Alternatively, assuming *arguendo* the applicability of the McNabb-Mallory doctrine, the delay in arraigning Gorman was not unreasonable. Initially, although it might appear a seventeen hour delay between arrest and arraignment is inordinate, the test of an unreasonable delay cannot be measured in terms of hours alone. Circumstances may justify a delay of over forty-eight hours, as in United States v. Walker, 176 F.2d 564, 567 (2 Cir.1949), cert. denied 338 U.S. 891, 70 S.Ct. 239, 94 L.Ed. 547, whereas other cases, as Mallory, hold seven hours unreasonable. If there is an overriding justification for the delay where "the purpose is investigatory, and not simply to keep the accused in custody until he confesses, if the police have good reason to believe that the suspect must be questioned further in order to determine whether he or any other person ought to be arrested", United States v. Vita, 294 F.2d 524, 533 (2 Cir.1961), or where there is no committing magistrate available, Williams v. United States, 273 F.2d 781, 798 (9 Cir.1959), cert. denied 362 U.S. 951, 80 S.Ct. 862, 4 L.Ed.2d 868, detention for a reasonable period of time is permissible.

■ Here the police were not engaged solely in a somewhat routine arrest for a narcotics violation. Upon Gorman's arrest they were immediately confronted with a situation that demanded further investigatory procedures. The presence of a .38 calibre Smith & Wesson pistol and the large amount of money in Gorman's car coupled with Gorman's voluntary admission at the scene of the arrest that he was involved in a "burglary in Houston" were sufficient reasons to interrogate Gorman at the police station and to call for the assistance of the "district attorney" and the F. B. I. Additionally, Gorman was now being held on felony charges of attempted bribery and possession of a dangerous weapon.

■ Moreover, the Court finds the necessary administrative "booking" procedures required under the facts of the instant case and the unavailability of the committing magistrate justify the delay from arrest to arraignment. The record reveals the night court judge did not arraign persons accused of felonies or narcotic violations. Gorman was presented for arraignment as soon as practical under the circumstances.

■ It is true, of course, that admissions made during legal detention may be suppressed for use at trial if not made voluntarily. Here, however, there was no evidence of coercion. During the seventeen hours Gorman was in police custody he was warned of his rights on several occasions. He was not mistreated. Questioning was not intensive or prolonged but was intermittent during a period of two hours on September 8, 1964 by city police and four hours on September 9, 1964 by the "district attorney" and the F. B. I. These necessary and reasonable investigatory interrogations were conducted with due regard for the rights of the defendant. United States v. Pravato, 282 F.2d 587 (2 Cir. 1960).

Accordingly, defendant's motion to suppress is denied.