John Michael **YOUNG**, Appellant,

v.

**UNITED STATES** of America, Appellee.

No. 17763.

United States Court of Appeals Eighth Circuit.

April 29, 1965.

Robert B. Hoemeke, of Green, Hennings, Henry, Evans & Arnold, St. Louis, Mo., made argument for appellant and filed typewritten brief.

Stephen H. Gilmore, Asst. U. S. Atty., St. Louis, Mo., made argument for appellee and filed typewritten brief with Richard D. FitzGibbon, Jr., U. S. Atty., St. Louis, Mo.

Before VAN OOSTERHOUT, BLACK-MUN and MEHAFFY, Circuit Judges.

MEHAFFY, Circuit Judge.

Defendant John Michael Young stands convicted of violating 18 U.S.C.A. § 2312 (commonly referred to as the Dyer Act) for transporting a stolen motor vehicle from McGehee, Arkansas to St. Louis, Missouri, with knowledge that the vehicle had been stolen.

The sole issue on appeal is the admission at trial of a confession made to an FBI agent while defendant was in custody of the St. Louis County police. Defendant asserted that federal officers illegally collaborated with state officers in his arrest and detention and are thus chargeable with these unlawful acts of the state officers. The defendant contends that inculpatory statements were obtained through secret interrogation while he was illegally detained because he was denied timely arraignment before a United States Commissioner following his arrest.

Prior to defendant's arrest in St. Louis, the Little Rock office of the FBI had been informed by an operator of a filling station in McGehee, Arkansas, that defendant and an associate named Gore had been in McGehee. This informer stated that the two men had stolen a pistol and all of the money in his service station cash register and had left a stolen 1962 Chevrolet at the service station. The 1962 Chevrolet had been taken from a department store parking lot in St. Louis County and had been reported stolen to the St. Louis County police by its owner. Upon obtaining this information from the Little Rock FBI office, Agent Caputo of the FBI St. Louis office relayed the information to the St. Louis County police, advising that they considered defendant to be a suspect. Defendant's record showed that he had been convicted of a number of felonies, including motor vehicle thefts.[1]

The St. Louis County police, having no authority to make arrests within the city limits where defendant resided, had the defendant taken into custody by the St. Louis Metropolitan police at his home on June 16, 1964 at 5:50 p. m. The defendant's wife was present. She requested to be taken to the home of her mother-in-law, which was done prior to taking the defendant to a city precinct station for booking. After booking, the defendant was transferred to city police headquarters for processing. At about 5:00 a. m. the following morning, defendant was turned over to the St. Louis County police at Clayton, Missouri. Between 10:30 and 11:00 a. m., the county police notified the FBI that the defendant was in their custody. The Clayton jail is some thirty minutes' drive from down-

1. At the time of his arrest, defendant was twenty-five years of age, with an eighth grade education, and had spent most of his life, since age seventeen, in prison.

town St. Louis. Agent Caputo and another FBI agent proceeded to the Clayton jail to interrogate defendant for the purpose of determining if any federal crime had been committed. Agent Caputo commenced interrogation at 1:43 p. m. and concluded at 6:58 p. m. In his five page statement, the defendant admitted the theft of several motor vehicles. By this time the United States Commissioner was unavailable for arraignment, so defendant was held overnight. On the morning of June 18, Agent Caputo went to the office of the Chief Assistant United States Attorney who arrived around 9:00 a. m. The Government Attorney authorized a complaint which Agent Caputo filed as soon as he could locate the United States Commissioner. Upon issuance of the arrest warrant, the agent delivered the warrant to the United States Marshal for execution. That same day, the Marshal arrested defendant and promptly took him before the United States Commissioner where defendant waived hearing and bond was set.

According to defendant's confession, he and Gore had stolen a 1964 Chevrolet from the parking lot of a grocery store at Potosi, Missouri. Defendant admitted that he drove the stolen car, accompanied by his wife and Gore, to McGehee, Arkansas and back to St. Louis. This 1964 Chevrolet, the illegal interstate transportation of which the defendant was convicted, is a different vehicle from the one reported to county police by the FBI as having been stolen in St. Louis County and left at McGehee, Arkansas by the defendant and his confederate.

Defendant does not complain of any mistreatment or abuse by any officer. Agent Caputo advised defendant of his constitutional rights, including the right to counsel. Defendant admitted that he was knowledgeable of his rights and of the fact that any statement he made could be used against him.[2]

■ The initial arrest by the St. Louis city police was without a warrant. However, they were acting upon information of the county police who knew that a certain motor vehicle had been stolen in St. Louis County and that defendant had been in possession of this vehicle, when it was abandoned at a McGehee, Arkansas service station where it was being held at the time of his arrest. These facts constituted reasonable ground for believing defendant guilty of commission of a felony and thereby constituted probable cause for a legal arrest in the absence of a warrant. Carroll v. United States, 267 U.S. 132, 161, 45 S.Ct. 280, 69 L.Ed. 543 (1925); Schook v. United States, 337 F.2d 563 (8th Cir. 1964).[3]

■ Defendant supports his theory of an illegal working arrangement between the federal and state officers by asserting that the local police were used merely as instruments of the FBI to arrest, detain, and make him available for federal interrogation. Firstly, there is no evidence that the arrest and detention were at the request of federal officers or for the purpose of assisting them. The proper discharge of law enforcement responsibilities by the FBI required notification to the St. Louis County police of infor-

2. Defendant testified at the motion hearing that he was concerned about his wife of two months and one week. Defendant thought she was pregnant although no doctor had been consulted. He also stated that he was denied the opportunity to call his family about his wife and about a lawyer. Agent Caputo denied this. In denying the motion, the District Court announced for the record that he did not believe this testimony of the defendant. No issue of denial of right to counsel is made on appeal.

3. We note that under Missouri law persons arrested and confined to jail without warrant must be discharged from custody within twenty hours from the time of arrest unless charged and held by warrant. 38 V.A.M.S. § 544.170. The Supreme Court of Missouri has ruled that voluntary confessions and admissions made while a defendant is illegally held beyond that statutory period are admissible in evidence. State v. Ellis, 354 Mo. 998, 193 S.W.2d 31, 34 (1946), cert. denied 328 U.S. 873, 66 S.Ct. 1374, 90 L.Ed. 1642 (1945); State v. Williams, Mo., 369 S.W.2d 408, 419 (1963).

mation pertaining to the whereabouts of a vehicle stolen in St. Louis County and defendant's complicity with the theft. Once notified by the St. Louis County police that defendant was in their custody, the FBI was obliged to interrogate the defendant to ascertain whether federal laws had been violated.

Defendant first maintains that the confession should have been excluded under the rule of Anderson v. United States, 318 U.S. 350, 63 S.Ct. 599, 87 L.Ed. 829 (1943).

In Anderson, supra at 352, 63 S.Ct. at 600, Mr. Justice Frankfurter, speaking for the court, observed:

"These arrests were made without warrant. With commendable candor in regard to this and other misconduct of officers of the law, the Government does not defend the legality of the arrests."

There, two FBI agents were at the scene investigating the dynamiting of TVA power lines eight days before the first arrest was made. These agents were joined by six other FBI agents on the day of and the day following the first arrest. The federal officers were working in concert with the local sheriff and his company-paid, special deputies. The sheriff picked up the suspects and brought them to a company owned building for questioning by the federal officers. The federal officers interrogated the suspects intermittently for a period of six days without first arresting and arraigning them before a United States Commissioner. This course of joint action by the local and federal officers was for the obvious purpose of utilizing illegal arrests to bring numerous suspects under a hostile roof so they might be subject to intensive and grueling questioning. The interrogation which followed during this unlawful detention included the pitting of one suspect against the other to obtain the necessary incriminating evidence to charge them with a crime.

■ In striking contrast is the judicious arrest and detention of defendant in the instant case. Moreover, there is a

complete lack of evidence of "other misconduct" as existed in the Anderson case. The legitimate, prompt and efficient police methods employed by Agent Caputo could hardly be more antithetic to the "third degree" tactics resorted to in Anderson. True, Agent Caputo's interrogation of defendant lasted some five hours, but the satisfactory explanation is that the defendant confessed to quite a number of motor vehicle thefts. Defendant's statement on each was transcribed by hand, corrected, and rewritten at defendant's suggestion.

■ Although complaint is made of the time intervening between defendant's arrest and his appearance before the Commissioner, no abuse of defendant resulted therefrom. As a matter of fact, if the arrest had been made early one morning instead of late one afternoon, and if the arresting officer had not taken time to accommodate defendant's wife by driving her to the home of her mother-in-law, the whole business—the arrest, the booking, the processing, the interviewing, the placing of federal charges and the taking of defendant before the United States Commissioner—could have and probably would have been accomplished in a single day. Even so, the interview by the federal officer commenced while defendant was legally in the custody of the county police. And there is no significance that the state officers did not question defendant except during the time he was in the arresting officer's car en route to the precinct station. The vehicle involved here was stolen in Potosi, Missouri, outside the jurisdiction of the St. Louis County and St. Louis Metropolitan police. They had ample evidence to justify an indictment and sustain a conviction for the theft of the vehicle stolen in St. Louis County without need for any admission from the defendant. Furthermore, it is more or less common practice for a state agency to refrain from prosecution in Dyer Act cases when the federal authorities determine to proceed. The crime against both sovereigns stems from the same criminal transaction and prosecution by either agency is generally

deemed sufficient. A painstaking search of the record fails to reveal sufficient evidence that an unlawful working arrangement existed between the federal and local law enforcement officers. A bare suspicion of a "working arrangement" will not justify reversing the decision of the District Court which had the benefit and advantage of hearing the live testimony and observing the demeanor of the witnesses.

■ In United States v. Coppola, 281 F.2d 340, 344–345 (2nd Cir. 1960), aff'd. 365 U.S. 762, 81 S.Ct. 884, 6 L.Ed.2d 79 (1961), the Second Circuit spelled out the burden of proof a defendant must meet to establish an unlawful collaboration between state and federal authorities so as to exclude resulting confessions under the Anderson rule:

> "However, to bring a case within this rule there must be facts, as there were in Anderson, not mere suspicion or conjecture. Here, as in United States v. Abel, 2 Cir., 1958, 258 F.2d 485, 494, affirmed, 1960, 362 U.S. 217, 226–230, 80 S.Ct. 683, 4 L.Ed.2d 668, rehearing denied, 1960 [362 U.S. 984], 80 S.Ct. 1056 [4 L.Ed.2d 1019], there is no basis on which this court can properly reverse the conclusion of the district judge. The Supreme Court's decision in that case makes plain that the mere fact that two or more agencies have the same crime or the same suspects on their books and that they are cooperating to achieve a solution does not make one the agent of the other and thus responsible for the other's acts.
>
> \* \* \* \* \* \*
>
> "In the absence of any evidence of collaboration to achieve an unlawful end, we would not be warranted in creating a rule whereby prior cooperation of state and federal officials in the investigation of crime would prohibit the admission of uncoerced confessions made during a detention by state officers which the Federal officials did not induce and were powerless to prevent."

See also Cram v. United States, 316 F.2d 542 (10th Cir. 1963); Watts v. United States, 273 F.2d 10 (9th Cir. 1960), cert. denied 362 U.S. 982, 80 S.Ct. 1069, 4 L.Ed.2d 1017 (1960); and Papworth v. United States, 256 F.2d 125 (5th Cir. 1958), cert. denied 358 U.S. 854, 79 S.Ct. 85, 3 L.Ed.2d 88 (1958).

■ Defendant relies on McNabb v. United States, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819 (1943), Mallory v. United States, 354 U.S. 449, 77 S.Ct. 1356, 1 L. Ed.2d 1479 (1957), and Fed.R.Crim.P. 5(a) in further support of his contention that the confession should have been excluded. There is no doubt that the Mc-Nabb-Mallory rule and Fed.R.Crim.P. 5(a) would require the exclusion of the confession if the doctrine of Anderson applied and the detention was by or at the instance of the federal officers. We have already ruled that the proof does not justify exclusion under Anderson because the arrest was legally made by local officers and, at the time the federal agent interrogated defendant, he was still in their custody. Numerous Circuits have passed on this issue and held that under circumstances similar to the instant case the rule embodied in McNabb-Mallory and Fed.R.Crim.P. 5(a) does not require the exclusion of such evidence. The Sixth Circuit in United States v. Sailer, 309 F.2d 541, 542 (6th Cir. 1962), cert. denied 374 U.S. 835, 83 S.Ct. 1884, 10 L.Ed.2d 1057 (1963), said:

> "The McNabb rule prohibits the use in a criminal trial of confessions obtained during illegal detention of a defendant, whether or not the confession is the result of torture, physical or mental. The illegal aspect of the detention must be the failure to bring the charged person before a committing magistrate without unnecessary delay. Rule 5(a) Federal Rules of Criminal Procedure. See Upshaw v. United States, 335 U.S. 410, 69 S.Ct. 170, 93 L.Ed. 100. Not only must the legality of the detention be challenged under Rule 5(a) for McNabb to apply, but it must

also appear that the detention was 'by or at the instance of federal officers.' White v. United States, 5 Cir., 200 F.2d 509, cert. denied, 345 U.S. 999, 73 S.Ct. 1142, 97 L.Ed. 1405. See discussion in Stephenson v. United States, 257 F.2d 175 (C.A. 6).

\* \* \* \* \* \*

" \* \* \* No 'working arrangement' on this occasion or customary practice concerning same is shown. It results that appellant has not sustained his burden of proving a violation of Rule 5(a), Federal Rules of Criminal Procedure. United States v. Leviton, 193 F.2d 848, 854, C.A. 2, cert. denied 343 U.S. 946, 72 S.Ct. 860, 96 L.Ed. 1350."

The Tenth Circuit in Swift v. United States, 314 F.2d 860, 862 (10th Cir. 1963) concluded similarly:

"Rule 5(a), which requires that a person who is arrested be taken before a commissioner without unnecessary delay, is invoked only when an officer makes an arrest under federal law. It has no application in this instance since the record here is clear that, at the time the statement was made by Swift, he had been arrested on a state charge, and was in the sole custody of state officers."

The Fifth Circuit opined in Brown v. United States, 228 F.2d 286, 289 (5th Cir. 1956), cert. denied 351 U.S. 986, 76 S.Ct. 1055, 100 L.Ed. 1500 (1956): "The McNabb Rule is inapplicable when the unlawful detention is by State officers not acting in collaboration with federal officers." See also United States v. Long, 323 F.2d 468, 471 (6th Cir. 1963) and cases there cited.

In summary, the federal officers interrogated defendant on one occasion when he was under legal arrest and in the custody of the local officers. The confession obtained was not the product of coercion or mistreatment. Thereafter, the federal officers obtained and executed an arrest warrant as soon as practicable, and defendant was immediately arraigned before the United States Commissioner.

The record contains no evidence of abuse of defendant's rights, and we therefore find no justification for reversing either the District Court's ruling against defendant's motion to suppress or the jury's verdict of guilt.

We commend Mr. Edward F. Downey and Mr. Robert B. Hoemeke, court-appointed counsel in the trial in District Court and on this appeal, respectively, for their able representation which assured defendant protection of his every right.

The judgment of conviction is affirmed.