UNITED STATES of America, Appellee,

v.

Charles E. ROSE, Appellant.

No. 76–1144.

United States Court of Appeals, Eighth Circuit.

Submitted May 10, 1976.
Decided Sept. 9, 1976.

Edwin L. Noel, St. Louis, Mo., for appellant.

David Rosen, Asst. U. S. Atty., St. Louis, Mo., for appellee; Donald J. Stohr (former U. S. Atty.), Barry A. Short, U. S. Atty., St. Louis, Mo., effective May 15, on brief.

Before VOGEL, Senior Circuit Judge, and HEANEY and HENLEY, Circuit Judges.

HENLEY, Circuit Judge.

In May, 1975 Charles E. Rose, appellant here and defendant below, was tried before a jury in the Eastern District of Missouri [1] on a charge of armed robbery of the City Bank & Trust Company of Moberly, Missouri, which is located in Randolph County in the Eastern District of that State. 18 U.S.C. § 2113(a) and (d). The defendant was found guilty and was sentenced to imprisonment for a term of twenty years.

The defendant appealed assigning a number of alleged errors of the trial court, including the claim that that court had erroneously refused to suppress as evidence a confession that he had given to agents of the Federal Bureau of Investigation on January 22, 1975 while he was in state custody following an initial period of federal custody.

The case was heard by a panel consisting of retired Associate Justice Clark of the Supreme Court of the United States, sitting by designation, and by Circuit Judges Lay and Ross. That panel rejected all of defendant's arguments except his contention that his confession should have been suppressed. With respect to that contention the court remanded the case for further hearing and findings. *United States v. Rose*, 526 F.2d 745 (8th Cir. 1975), *cert. denied*, 425 U.S. 905, 96 S.Ct. 1497, 47 L.Ed.2d 755 (1976). *See also* the related case of *United States v. Kelley*, 526 F.2d 615 (8th Cir. 1975), *cert. denied*, 424 U.S. 971, 96 S.Ct. 1471, 47 L.Ed.2d 739 (1976).

After the remand counsel for the defendant filed a motion for a new trial with the confession suppressed. An evidentiary hearing was held and testimony was taken. On February 18, 1976 the district court filed a Memorandum which amounted to a second refusal to suppress the confession and a refusal to grant a new trial. The instant appeal followed.

The controlling facts are substantially as follows:

The bank was robbed during the early evening hours of Friday, January 10, 1975. Six men were involved in the robbery although only three of them actually entered the bank. In addition to the defendant the men involved were Gary Roberson, Tyrone J. Kelley, Thomas Edward Simmons, Jr., Theopolis Wilson and Baron Stamphill. Immediately after the robbery the money that had been stolen from the bank, amounting to about $14,000.00, was hidden in a trash can near the bank. Roberson was arrested as he tried to recover the money from the can. The other robbers were not apprehended at the time and appear to have made their escape from Moberly returning to their homes in Kansas City, Missouri, which is located in Jackson County in the Western District of that State.

Roberson confessed his complicity in the crime immediately and implicated Rose and the other participants in the robbery. The FBI had an understanding with Roberson that the fact of his confession would not be revealed until the other robbers were apprehended.

On January 11 an informant of the Kansas City Police Department overheard a conversation in which Rose admitted his complicity in the bank robbery the day before. Rose was arrested by local officers in Kansas City either on that day or on the following day and was confined in the Jackson County Jail. While there, he was interviewed by the FBI and made an exculpatory statement.

On January 12 Sheriff Orville Price of Randolph County returned from a Florida vacation and learned of the robbery from two of his deputies. He learned that a number of men were involved, and that one

---

1. The Honorable H. Kenneth Wangelin, United States District Judge.

of them had confessed. The Sheriff discussed with the local Prosecuting Attorney, Thomas J. Marshall, who had taken office on January 1, the matter of having felony warrants issued for the robbers. However, the Sheriff was not able to give the Prosecuting Attorney any definite information as to the identities of the men involved, and since the FBI was actively investigating the case, there seemed to be no urgency in the matter from the standpoint of the state officers, and no warrants were issued at the time.

On January 13 Special Agent William Duncan of the FBI filed a sworn and detailed complaint against Rose with United States Magistrate Lund in St. Louis, and a warrant for the arrest of Rose was issued. The affidavit of Special Agent Duncan revealed, among other things, that an "active participant" in the robbery had confessed and had implicated Rose. The affidavit identified Roberson as one of the robbers, but it did not identify him by name as the active participant who had confessed.

Rose was promptly taken into federal custody in Kansas City and was taken before the United States Magistrate there. That arrest may conveniently be called the "first arrest" of Rose.

The Magistrate at Kansas City presumably advised defendant of his rights including his right to a preliminary hearing as provided by Fed.R.Crim.P. 5(c). It does not appear that the defendant asked for an attorney or that an attorney was appointed to represent him. However, he was not willing to waive preliminary hearing, and such a hearing was scheduled for January 20.

The federal grand jury for the Eastern District of Missouri was scheduled to meet during the week beginning on January 20, but it was evidently not felt that an indictment could be obtained against Rose and Simmons, who was also in custody in Kansas City, prior to the scheduled preliminary hearing.[2] It appears that an Assistant United States Attorney at Kansas City made an effort to obtain a short postponement of the hearing but was not successful.

At the preliminary hearing the burden would have been upon the government to introduce evidence establishing the existence of probable cause to hold the defendant for trial. Fed.R.Crim.P. 5.1(a). And a failure on the part of the government to meet that burden would require the federal magistrate to dismiss the complaint and discharge the defendant. Fed.R.Crim.P. 5.1(b). In order to meet its burden the government would have been required to call Roberson as a witness ·or at least to reveal the fact that he had confessed and had implicated others including Rose.

As of January 17 Kelley and Wilson were still at large, and they were considered to be dangerous. If they were still at large on January 20, disclosure of the fact and contents of Roberson's confession would have violated the agreement that the government had made with Roberson.

In such circumstances Assistant United States Attorney Terry Adelman of the Eastern District of Missouri, who was in over-all charge of the prosecution, decided that the government would not introduce any evidence at the hearing on January 20. His counterparts in Kansas City were advised of that determination, and naturally Special Agent Duncan also knew of it.

On January 17 Special Agent Duncan advised Prosecuting Attorney Marshall of the situation and of the fact that Rose would in all probability be released from federal custody at the conclusion of the proceeding before the Magistrate on January 20. Duncan was advised by Marshall that state officers would be on hand to arrest Rose should the federal Magistrate set him at liberty. Duncan conveyed that information to Adelman who passed it on to the United States Attorney's office in Kansas City.

On Saturday, January 18, Prosecuting Attorney Marshall applied to a Randolph

---

2. Under the terms of Rule 5(c), the preliminary hearing would not have been held had Rose been indicted prior to the hearing date.

County Magistrate for a warrant for the arrest of Rose. Mr. Marshall filed a sworn complaint with the Magistrate which simply charged that Rose had robbed the Moberly bank in violation of § 560.120 of the Revised Statutes of Missouri. Neither the complaint nor the warrant that the Magistrate issued set out any facts from which the existence of probable cause to believe that Rose had been involved in the bank robbery could be inferred. No testimony was taken before the Magistrate prior to the issuance of the warrant although in his testimony at the post-remand hearing Mr. Marshall recalled that he did discuss the case informally with the Magistrate and gave him some information about the case.

As indicated, the warrant was issued and placed in the hands of Sheriff Price for service. The warrant was to be served in Jackson County; in such circumstances the warrant should have been authenticated by the Clerk of the County Court of Randolph County or it should have been presented prior to service to a magistrate in Jackson County for endorsement. V.A.M.S. § 544.-100. Neither of those steps was taken.

On January 20 the United States Magistrate in Kansas City convened his hearing; the government produced no evidence and Rose was discharged from custody. As he undertook to leave the United States Courthouse, he was arrested by Sheriff Price and carried back to Randolph County.

Upon his arrival in Randolph County, the defendant was taken before the local magistrate who had issued the warrant. He was arraigned and was committed to jail in default of bail. No preliminary hearing was held.

On January 22 the defendant was interviewed in the jail by one or more FBI agents and made the confession here in question. He does not claim that the confession was not preceded by proper warnings as to his rights, and he does not contend that the confession was the product of force, threats, promises or improper induce-ments. He was not questioned at any time by the local officers.

On January 23 the federal grand jury at St. Louis returned an indictment charging Kelley, Rose, Simmons and Wilson with the Moberly robbery. On January 24 Rose was arrested by Deputy United States Marshals and was removed from the Randolph County Jail to St. Louis. All four of the defendants pleaded not guilty; Rose was tried separately from his co-indictees. All were convicted.

After defendant's conviction in federal court the state charges against him were dropped. The record does not disclose what final disposition was made of the federal charge against Roberson and Stamphill.

In the course of or prior to the original trial the defendant filed a motion to suppress the confession. He contended that the warrant issued for his arrest by the Magistrate was not supported by probable cause, and he also contended that the confession was obtained while he was illegally in custody in Randolph County as a result of a prior "working agreement" between the federal and state officers designed to deprive him of his rights to a preliminary hearing under Fed.R.Crim.P. 5 and 5.1.

The district court held a hearing on the motion and denied it, rejecting both of the contentions put forward by the defendant. The district court refused to permit the defendant to introduce evidence going to the question of probable cause. As to the alleged working agreement, the district court was of the view that defendant's proof failed to establish the existence of such an agreement.

As has been seen, the defendant was convicted and appealed.

When the case reached us originally, we were troubled by the possibility that the confession was obtained while the defendant was in custody illegally, and that suppression of the confession might be required by *Brown v. Illinois,* 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975), and *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).[3] And we were also

3. *Brown* was decided after the defendant was convicted. However, this court said, "We have no problem of retroactive application since *Brown v. Illinois* merely applied the established principles of *Wong Sun v. United States.* . . ." 526 F.2d at 748, n. 3.

concerned with the possibility that if, when the confession was obtained, the defendant was being held by the Randolph County authorities pursuant to a prior federal-state arrangement or working agreement, the admission of the confession might have violated the exclusionary rule laid down in *Anderson v. United States,* 318 U.S. 350, 63 S.Ct. 599, 87 L.Ed. 829 (1943).

The court in effect held that the validity of the second arrest of the defendant depended upon whether probable cause existed to believe that he had been involved in the bank robbery, a question which the district court had not permitted the defendant to explore. Consequently, the case was remanded for a further hearing and for findings on that issue. While the court agreed with the district court that the evidence at the suppression hearing had not established the existence of the federal-state agreement postulated by the defendant, nevertheless the court felt that since there was to be a remand on the question of probable cause, the *Anderson* issue should be reopened also. The gist of the holding will be found in 526 F.2d at 750.

At the post-remand hearing the district court heard the testimony of Sheriff Price, Prosecuting Attorney Marshall and Assistant United States Attorney Adelman. Special Agent Duncan was not called as a witness.

In its 1976 Memorandum the district court found that as of January 18, 1975 there was probable cause to believe that the defendant had been a participant in the robbery of the Moberly bank. Having so found, the district court was of the opinion that it need not consider the validity of the warrant as such or the question of whether there .was any arrangement or working agreement between the federal and state officers relating to the defendant.

I.

We take up, first, the claim of the defendant that his confession should have

been suppressed in the light of *Brown v. Illinois, supra.*

That case was an updating of the earlier case of *Wong Sun v. United States, supra,* which was decided before the Supreme Court decided *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

In *Brown* the Supreme Court held that where a person is arrested and detained in violation of his rights under the fourth amendment, a confession obtained from him while he was illegally in custody may have to be suppressed even though it was preceded by adequate *Miranda* warnings, and even though it was "voluntary" in the sense that it was not the product of force, threats, or impermissible promises or inducements. Such a confession is presumptively inadmissible in evidence in federal court, and the burden is on the prosecution to establish that the confession was in fact voluntary and was not the product of or tainted by the unlawful arrest and confinement. We considered and applied *Brown* in *United States v. Shavers,* 524 F.2d 1094 (8th Cir. 1975), and held that the confession and certain evidence in that case should have been suppressed.

However, the *Brown* court recognized that a confession obtained from a person confined in violation of his fourth amendment rights is not invariably subject to suppression, and that each case must be decided on its own facts. Consideration is to be given to the following factors: The presence or absence of proper *Miranda* warnings; the length of time between the arrest and the confession; the presence of intervening circumstances; and the purpose and flagrancy of the official misconduct. 422 U.S. at 603–04, 95 S.Ct. 2254.

Turning now to the instant case, we, like the district court find it unnecessary to pass upon the validity of the warrant issued on January 18, 1975. That is true because we agree with the district court that on January 18 and January 20 the collective knowledge of the officers who had been working on the case was sufficient to give Sheriff

Price probable cause to believe that the defendant had been involved in the bank robbery and to arrest him on that basis either with or without a warrant.

It is firmly established that peace officers, including Missouri officers, may validly and constitutionally make an arrest without a warrant where probable cause exists to believe that the person to be arrested has committed a felony. *United States v. Watson,* 423 U.S. 411, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976); *United States v. Shavers, supra* ; *United States v. Heisman,* 503 F.2d 1284 (8th Cir. 1974); *Young v. United States,* 344 F.2d 1006 (8th Cir.), *cert. denied,* 382 U.S. 867, 86 S.Ct. 138, 15 L.Ed.2d 105 (1965); *State v. Owens,* 486 S.W.2d 462 (Mo.1972); *State v. Martin,* 465 S.W.2d 594 (Mo.1971); *State v. Ward,* 457 S.W.2d 701 (Mo.1970). That power is not limited to arrests made in emergencies or exigent circumstances. *United States v. Watson, supra,* 423 U.S. at 412, 96 S.Ct. at 822. Where probable cause for a warrantless arrest exists, the arrest is not invalidated because it was made pursuant to a warrant that turned out to be invalid. *Giordenello v. United States,* 357 U.S. 480, 488, 78 S.Ct. 1245, 2 L.Ed.2d 1503 (1958); *United States v. Rabinowitz,* 339 U.S. 56, 60, 70 S.Ct. 430, 94 L.Ed. 653 (1950); *United States v. White,* 342 F.2d 379, 381–82 (4th Cir.), *cert. denied,* 382 U.S. 871, 86 S.Ct. 148, 15 L.Ed.2d 109 (1965); *Hagans v. United States,* 315 F.2d 67, 69 (5th Cir.), *cert. denied,* 375 U.S. 826, 84 S.Ct. 68, 11 L.Ed.2d 58 (1963). *Cf. Holloway v. Wolff,* 482 F.2d 110, 113 (8th Cir. 1973).

In order for an officer to have probable cause to make an arrest without a warrant it is not necessary that he have personal knowledge of all items of information which taken together constitute probable cause. The court looks to the collective knowledge and information of all of the officers involved. *United States v. Heisman, supra,* 503 F.2d at 1290, n. 5; *United States v. Stratton,* 453 F.2d 36 (8th Cir.), *cert. denied,* 405 U.S. 1069, 92 S.Ct. 1515, 31 L.Ed.2d 800 (1972).

On January 20, 1975 the officers knew that several men had been involved in the robbery, that Roberson had confessed and that he had implicated Rose; and they also knew that Rose had been overheard in Kansas City to admit his involvement in the crime. And they also knew that certain photographic identifications of Rose connected him with the robbery. That knowledge was certainly sufficient to constitute probable cause for the defendant's arrest.

Defendant argues that in any event Sheriff Price had no right to arrest him in Jackson County. That argument does not rise to constitutional dignity. We are concerned here not with whether state law was violated but with whether the defendant was deprived of a federally protected right. *Cf. Mueller v. Powell,* 203 F.2d 797, 800 (8th Cir. 1953).

Defendant argues further that even if he was arrested lawfully, his confession should be suppressed because when he made it he had been held in Missouri custody for more than twenty hours in violation of V.A.M.S. § 544.170. That statute provides that if a person is arrested without a warrant and placed in jail, he must be released unless within twenty hours a formal criminal charge is filed against him and a warrant issued holding him to answer the charge. The short answer to that argument is that a criminal charge had been filed against the defendant before his second arrest and he was in fact arrested under a warrant, albeit an invalid one. In any event, we do not consider that the confinement of the defendant for more than twenty hours, even if it was a violation of § 544.170, constituted a wrongful confinement in any constitutional sense of the term.

But, assuming arguendo and contrary to our holding that the second arrest of the defendant and his detention when he confessed were in some way violative of his fourth amendment rights, we do not consider that the facts and circumstances of the arrest and detention were comparable to those present in *Brown* and *Wong Sun,*

or were such as to require suppression of the confession. Defendant's arrest by Sheriff Price was not an initial arrest, and it was not effected in disregard of his rights; on the contrary, the officers made a conscious effort to protect his rights by obtaining a warrant for his arrest, and the Sheriff obviously thought a valid warrant had been obtained. Adequate *Miranda* warnings were given before the confession was obtained. Some forty hours elapsed between the second arrest and the confession, and the defendant was not questioned during the interim until he was reinterviewed by the FBI. About a week had passed between defendant's first arrest and the second arrest, and in the meantime he had been taken before a federal Magistrate; his federal custody was terminated initially only because the government did not feel in a position to introduce evidence of probable cause.[4]

So, the claim based on *Brown* will be rejected.

## II.

We now turn to the defendant's contention based on *Anderson v. United States, supra.*

That case and its more celebrated companion case, *McNabb v. United States*, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819 (1943), held inadmissible in federal criminal trials confessions that had been obtained by prolonged questioning of the defendants by federal officers while the defendants were detained in custody in violation of their right to be carried promptly before magistrates for appropriate proceedings. In the *McNabb* case the defendants had been in federal custody while being questioned. In *Anderson* the defendants were being held in state custody while being questioned with the custody being based upon a federal-state working arrangement.

In neither case were the confessions excluded on constitutional grounds. Rather the exclusions amounted to an exercise of judicial supervision of the administration of

criminal justice in the federal courts which places upon those courts the duty "of establishing and maintaining civilized standards of procedure and evidence." *McNabb v. United States, supra*, 318 U.S. at 340, 63 S.Ct. at 613.

Both holdings, like those in *Brown v. Illinois* and *Wong Sun v. United States*, were designed to deter law enforcement officers from unlawful conduct by denying them the use of the fruits of their misconduct as evidence in federal court.

Counsel for the defendant conceded before the original panel that the case does not present a *McNabb* problem, as such, 526 F.2d at 748, n. 2. And the case is not typically *Anderson* since defendant's custody by Missouri authorities from January 20 to January 24, 1975 had been preceded by a federal custody in the course of which the defendant had been brought before a federal Magistrate as provided by Fed.R.Crim.P. 5(a), and a preliminary hearing had been set by the Magistrate as required by Fed.R. Crim.P. 5(c).

The real question, then, is whether there was such a violation of defendant's rights under Fed.R.Crim.P. 5(c) and Rule 5.1(b) that the policy underlying *McNabb* and *Anderson* required the district court to suppress the confession of January 22. We do not doubt that in a proper case suppression might be required; the problem is whether this is such a case.

The *Anderson* decision is discussed in some detail in 1 C. Wright, Federal Practice & Procedure: Criminal § 73, at 82–84 (1969). While Professor Wright thinks that the *Anderson* rule is a sensible one, he also thinks that judicial construction has reduced it to near nonexistence. Perhaps the chief stumbling block in the path of defendants invoking *Anderson* has been their inability to discharge their burden of establishing that the state custody in which they were being held when they confessed was the product of an impermissible federal-state working agreement. *See, e. g.,*

---

4. Had such evidence been introduced, and had the defendant later confessed while in federal

custody, he would have had no cause to complain.

*Grooms v. United States*, 429 F.2d 839 (8th Cir. 1970); *Tucker v. United States*, 375 F.2d 363 (8th Cir.), *cert. denied*, 389 U.S. 888, 88 S.Ct. 128, 19 L.Ed.2d 189 (1967); *Young v. United States, supra; United States v. Coppola*, 281 F.2d 340 (2d Cir. 1960), *aff'd per curiam*, 365 U.S. 762, 81 S.Ct. 884, 6 L.Ed.2d 79 (1961).

It is perhaps unfortunate that the district court did not consider it necessary to make post-remand findings geared to the defendant's reliance on *Anderson*. We feel, however, that the record before us is adequate to permit us to make such findings as are necessary, and we are not willing to remand the case a second time for findings. *Cf. Brown v. Illinois, supra*, 422 U.S. at 604–05, 95 S.Ct. 2254.

We find, first, that when the facts of the case are viewed realistically, the custody of the defendant that Missouri acquired on January 20 was simply a continuation of his prior federal custody. While technically the defendant was a free man for a very short period of time after the federal Magistrate dismissed the government's complaint, the defendant had no meaningful liberty.

We also find that not later than January 17 it was known to the responsible federal and state authorities that the government would not introduce any evidence before the Magistrate on January 20, that the Magistrate would be required to discharge the defendant, and that immediately he would be rearrested by Sheriff Price. We further find that the officials concerned with the case knew that in all probability the defendant and others would be indicted by the federal grand jury during the latter part of the week beginning January 20, and that after the indictment was returned there would be no occasion for a federal preliminary hearing.

■ Assuming the question to be a close one, we are not persuaded that the facts and circumstances leading up to, surrounding and following defendant's transfer from federal to state custody were such as to require a suppression of his confession.

There is no evidence that the decision of the government not to offer any evidence before the federal Magistrate was in bad faith or that it was a mere stratagem to get the defendant from one custody to the other so that he could be reinterviewed by federal officers in advance of a hearing.

The determination of the government not to call any witnesses at the hearing did not depend on any agreement with Missouri authorities that they would take the defendant into custody as soon as he was released from federal custody. That determination had been made without regard to what the Missouri authorities might or might not do. Had the Missouri authorities refused to have anything further to do with the case or had Sheriff Price failed for any reason to appear at the federal courthouse in Kansas City to arrest the defendant, he would have been in fact as well as in theory a free man, at least for a time, after the federal Magistrate had discharged him from federal custody.

Cooperation between federal and state law enforcement officers within reasonable limits is to be encouraged, and *Anderson* should not be construed so as to discourage proper cooperation between the two sovereignties.

The federal officers knew that the preliminary hearing would or might have the result of setting at liberty a man whom they had every reason to believe had committed a most serious crime. Special Agent Duncan is not to be blamed for alerting the state officials as to what was about to happen, and surely they are not to be blamed for arranging to arrest the defendant when he should be released from federal custody.

We do not see that the procedure followed in this case violated "civilized standards" of procedure, or that it was harsh or oppressive. There is nothing to indicate that the defendant was influenced to confess by the fact that he was in state custody, and it is clear that his confession was voluntary and was made after he had been advised fully as to his rights.

The district court's original judgment of conviction and its post-remand refusal to grant a new trial with the confession suppressed are affirmed.