William Eugene SWIFT, Appellant,

v.

UNITED STATES of America, Appellee.

No. 7086.

United States Court of Appeals Tenth Circuit.

March 19, 1963.

---

13. Art. 44(a), UCMJ, 10 U.S.C. § 844(a).

H. G. Bill Dickey, Tulsa, Okl., for appellant.

John M. Imel, U. S. Atty., Tulsa, Okl. (Phillips Breckinridge, Asst. U. S. Atty., Tulsa, Okl., with him on the brief), for appellee.

Before MURRAH, Chief Judge, and PICKETT and LEWIS, Circuit Judges.

PICKETT, Circuit Judge.

The defendant, William Eugene Swift, was convicted by a jury on an indictment which charged him, together with Jack Edgar McBride, with transporting, in interstate commerce, stolen casing and tubing having a value in excess of $5,000, with knowledge that it was stolen. The facts alleged in the indictment charge a violation of 18 U.S.C. § 2314. Swift appeals from a judgment sentencing him to imprisonment for a term of three years and six months.

The charge arose out of the theft of a large quantity of oil well casing and tubing from the Midland Supply Company pipe yard near Medicine Lodge, Kansas. From the undisputed evidence, it appears that, on the night of April 15, 1961, Swift, McBride, Alfred Banks and Tom H. Ray entered the Midland Supply Company yard and took, without the permission of the owner, two truck loads of casing and one truck load of tubing worth not less than $7,000. According to the testimony of Banks and Ray, when

the loaded trucks left the yard early in the morning of April 16, 1961, Swift drove the truck loaded with tubing, and McBride, accompanied by Ray, drove one of the trucks loaded with casing, while Banks drove the third truck. They testified that Swift took a different fork in the road several miles out of Medicine Lodge, Kansas, and they did not see him until the next day, at a prearranged meeting place in Cherokee, Oklahoma. Swift paid Banks $400, and McBride paid Ray $300, for their services in loading and moving the three truck loads of pipe.

A dealer in used oil field supplies at Tulsa, Oklahoma testified that he had made arrangements to purchase oil field pipe from McBride; that a trailer load of tubing was left in his yard at Tulsa, Oklahoma on the night of Sunday, April 16, 1961; and that the balance was delivered directly to one of his customers near Billings, Oklahoma. It appears from the record that officials of Midland Supply Company identified the truck load of pipe that was left in the Tulsa pipe yard on Sunday night as similar to the tubing which was stolen from the yard in Medicine Lodge, Kansas.

About ten days after the theft Swift was arrested at Tulsa, Oklahoma, and, while in the custody of state officers at Enid, Oklahoma, he made an oral statement to Joe Cramer, a detective sergeant with the Tulsa Police Department, detailing his part in the crime. In his statement to Cramer, Swift said that he, McBride, and the two others, had rented the tractor-trailers, driven to Medicine Lodge, Kansas, loaded the pipe at the Midland Supply Company yard at Medicine Lodge, Kansas, and brought it back to Oklahoma. He said he left the trailer loaded with the tubing at the oil field supply yard in Tulsa.

▬▬ Swift's primary contention is that his statement to Sergeant Cramer should have been excluded from evidence because it was made after he had been unlawfully detained in violation of the rule announced in Mallory v. United States, 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479. In the Mallory case the Supreme Court applied the standard announced in McNabb v. United States, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819, to Rule 5(a) of the Federal Rules of Criminal Procedure. Rule 5(a), which requires that a person who is arrested be taken before a commissioner without unnecessary delay, is invoked only when an officer makes an arrest under federal law. It has no application in this instance since the record here is clear that, at the time the statement was made by Swift, he had been arrested on a state charge, and was in the sole custody of state officers. Unlawful detention by state officers may, under some circumstances, provide a basis for the exclusion of a confession or an incriminating statement in federal courts, Anderson v. United States, 318 U.S. 350, 63 S.Ct. 599, 87 L.Ed. 829, but those circumstances are not present in this case. There is nothing in the record which indicates that Swift was being unlawfully detained by the state officers, or anyone else, at the time he made the statement to Cramer. The record is entirely devoid of evidence of any participation or collaboration by federal officers in Swift's detention, whether unlawful or not. Furthermore, the question was not presented to the trial court, and is raised for the first time on appeal.

There was some testimony adduced at the trial from which it might be implied that Swift's confession was induced by a promise of leniency, and was made without the usual warning which should be given to one accused of having committed a crime. The trial judge made a preliminary inquiry into the question of whether Swift's statement was made voluntarily, and then submitted that question to the jury under a proper instruction.[1] It further appears that before he made the statement Swift had conferred with

1. Swift testified at the hearing to the court, outside the presence of the jury, and emphatically denied that he made the incriminating statement to Sergeant Cramer.

an attorney from Tulsa who was in Enid representing Swift and others in the matters then being investigated. In any event, the only question of voluntariness that Swift raises on appeal is whether his statement was obtained in violation of the "Mallory" rule.

Swift also contends that the evidence with respect to the identification of the pipe was "of the rankest type of hearsay." In describing identifying symbols on the pipe, an employee of the owner of the pipe testified as to information which the manufacturer of the pipe had furnished him, but no objection was made to the evidence on that ground, and the objection was waived. Sandoval v. United States, 10 Cir., 285 F.2d 605; Moreland v. United States, 10 Cir., 270 F.2d 887; O'Dell v. United States, 10 Cir., 251 F.2d 704; Dunn v. United States, 10 Cir., 190 F.2d 496. The error, if any, was harmless, as the other evidence of transportation is uncontradicted, and Swift, in his statement to Cramer, said that the pipe transported to Oklahoma was the pipe taken from the yard in Kansas.

Finally, Swift urges that the United States Attorney committed prejudicial error in his argument to the jury. The argument referred to was to the effect that Swift's three cohorts had pleaded guilty and that "you don't plead guilty unless you know that what you did was wrong." This argument was made in a specific context. On cross-examination, Swift's counsel had elicited testimony from two of Swift's accomplices that they did not know that they were loading stolen pipe on the trucks. In his closing argument, Swift's counsel then urged upon the jury the proposition that since these individuals did not know that they were loading stolen pipe it was reasonable to believe that Swift did not know the pipe was stolen. If this argument by Swift's counsel had been accepted by the jury, it would have acquitted Swift. Under these circumstances, it was entirely proper for the United States Attorney to argue, as he did, that Banks and Ray did know that the pipe was stolen, as demonstrated by their pleas of guilty. In any event, there was no objection to the argument, and the error, if any, is not of such fundamental importance that it should be noticed on appeal. Heald v. United States, 10 Cir., 175 F.2d 878, cert. denied 338 U.S. 859, 70 S.Ct. 101, 94 L.Ed. 526; Pietch v. United States, 10 Cir., 110 F.2d 817, 129 A.L.R. 563, cert. denied 310 U.S. 648, 60 S.Ct. 1100, 84 L.Ed. 1414.

Affirmed.