James Ernest **BUTTERWOOD**, Appellant,

v.

**UNITED STATES of America,**
**Appellee.**

No. 8757.

United States Court of Appeals
Tenth Circuit.

Aug. 26, 1966.

James M. Dyer, Lakewood, Colo., for appellant.

Donald E. Cordova, Asst. U. S. Atty. (Lawrence M. Henry, U. S. Atty., on the brief), for appellee.

Before HILL, SETH and HICKEY, Circuit Judges.

HILL, Circuit Judge.

In a jury trial in Federal District Court, the appellant was convicted of violating Title 18 § 2312 (Interstate Transportation of a Motor Vehicle) commonly known as the Dyer Act. This is a direct appeal from that conviction.

Appellant contends that the trial court erred by admitting into evidence over his objections statements signed by him. These statements were taken from appellant by an agent of the F.B.I. and one of them was in the nature of a confession. Appellant's contentions may be summarized as involving: (1) Failure of the trial court to determine the voluntariness of appellant's confession in a fair, separate hearing, violative of Amendment V to the United States Constitution; (2) failure to provide counsel, violative of Amendment VI to the United States Constitution; and (3) a violation of Rule 5 (a) of the Federal Rules of Criminal Procedure.

On October 24, 1965, around noon, appellant, who was then 18 years old, was driving a 1965 Ford Mustang automobile with Louisiana license plates along a three-lane mountain highway in Colorado. He had a passenger, Brad Bennetto, who was a friend of about the same age. Appellant was observed by a Colorado highway patrolman in the middle-passing-lane. He was then stopped by the patrolman, who advised him that he should keep to the right except when passing. The state patrolman asked to see appellant's driver's license and the ownership registration receipt for the car. Appellant could produce neither and told the officer that he and Bennetto had purchased the automobile in Louisiana for $700.00 and that he had lost his wallet, containing the requested documents, in Kansas City. The patrolman radioed his headquarters in Golden to see if they had any report of the automobile being stolen. There was no such report. The officer then arrested appellant and his companion and took them to the Jefferson County Jail in Golden, Colorado, where they were booked by the State for suspicion of auto theft.

Sometime between three and four o'clock p. m. on October 25, the F.B.I. was notified by the state officials that they were holding appellant and Bennetto for investigation of automobile theft. The state requested information from the F.B.I. about the car appellant was driving when arrested. At approximately 8:10 p. m. on the 25th, the Denver F.B.I. office received word that the car had been stolen in New Orleans. The following morning, October 26, Special Agent Bevans of the F.B.I. visited appellant and Bennetto in the Jefferson County Jail. Mr. Bevans interviewed Bennetto and obtained from him a statement which was reduced to writing and signed by Bennetto. This statement was inculpatory in nature and implicated appellant in the crime of transporting a stolen automobile in interstate commerce.

Agent Bevans, commencing at approximately 10:30 a. m. and ending about an hour later, then interviewed the appellant. He obtained from appellant two signed statements. In the first of these, appellant claimed he had purchased the car in Louisiana and had not yet received the title thereto. After taking this statement, Bevans called in Bennetto and told the two suspects that there was a discrepancy in their statements; that one of them was telling a "non-truth" and that "they must decide which statement is true." Bevans then left the room. Momentarily, he was called back and appellant admitted that his statement was false and Bennetto's correct. Bevans then took a second statement from appellant. In the second statement—which was reduced to writing and signed by him —appellant admitted his first statement was false, that he stole the Ford automobile in New Orleans and, knowing it was stolen, transported it in interstate commerce. Both statements made by appellant were received into evidence by the trial court.

We shall first deal with appellant's contention that the trial judge did not properly determine the voluntariness of appellant's statements. Appellant cites Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908, to the effect that the trial judge must determine the issue of voluntariness "without regard for the truth or falsity of the confession * *." Supra, 376, 84 S.Ct. 1780. Appellant contends that the trial court's findings that appellant's first statement was "phony",

that he changed his story only after being confronted with Bennetto's confession, and that appellant first pleaded guilty and waived counsel and later withdrew his guilty plea all indicate that the trial judge was "pre-occupied" with guilt or innocence and not voluntariness. The findings appellant refers to were all made in a separate hearing on a motion to suppress held before the grand jury had been called to indict appellant. An examination of the record of that hearing and the findings made by the trial judge clearly show that the trial court did, indeed, find that appellant made the two statements voluntarily. The remarks appellant complains of were made by the trial judge to support his finding of voluntariness—to indicate that appellant was acting as his own free agent in changing his story and making the incriminating statement. In fact, the trial court specifically found that appellant was not "so scared and so under the influence of the officer that he made his statement based upon some veiled threat." The trial court did specifically address itself to the action appellant now alleges coercive and found it had no overbearing effect on him. This is just the sort of procedure which Jackson v. Denno requires: "These procedures must, therefore, be fully adequate to insure a reliable and clear-cut determination of the voluntariness of the confession, including the resolution of disputed facts upon which the voluntariness issue may depend." Supra, at 391, 84 S.Ct. at 1788.

Secondly, appellant contends that the mandate of Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977, was violated by not providing appellant with counsel at a "critical" stage in the sequence of events leading to his conviction.

There can be no doubt that the point at which appellant gave his confession was a critical stage and the absence of counsel at that time raises a rebuttable presumption of denial of the Sixth Amendment's right. Haier v. United States, 10 Cir., 357 F.2d 336. However, an accused's mouth does not become " * * * legally closed after his right to counsel attaches * * * regardless of all else", Otney v. United States, 10 Cir., 340 F.2d 696, 702 (concurring opinion). Failure to have counsel at the time it is given does not ipso facto render a confession involuntary and inadmissible under the Escobedo ruling. To determine voluntariness, an examination must be made of all the " * * * attendant, pertinent facts and circumstances." Pece v. Cox, 10 Cir., 354 F.2d 913, 916. Such an examination of the record transcribed at the hearing on the motion to suppress appellant's signed statements reveals he consciously was aware of his right to counsel and intelligently waived it. Stille v. United States, 10 Cir., 354 F.2d 233; Shultz v. United States, 10 Cir., 351 F.2d 287; Mah v. United States, 10 Cir., 348 F.2d 881. Such a waiver was, in fact, contained in his written, signed statement.[1] Appellant now urges, however, that at no time did the agent read to him that portion of the statement containing, or otherwise advise him of, his right to counsel, and that he did not waive the same. The trial court found

---

1. Agent Bevans testified that when he first saw appellant he did the following:
"THE COURT: I believe it would be helpful if you just relate everything that was said.
THE WITNESS: As far as Mr. Butterwood?
THE COURT: Yes.
THE WITNESS: Okay. I first identified myself, and then I told Mr. Butterwood that I was from the FBI. I showed him my credentials and I said that he did not have to make any statement, at all, to me, and that any statement he would make there is a possibility that there—it could be used against him in a court of law. I told him that he could call an attorney before speaking to me, or he didn't have to talk to me, at all. And I told him that I wasn't in a position to make him any promises, and I wouldn't make any threats in order to have him make his statement.
And then he proceeded to give me a story to the effect that he and Bennetto had met a gambler in the Town of Buras, Louisiana, which is just * * *."

that appellant was adequately advised: "I find that the agent did, indeed, tell him that it may have been rather briefly, but he did tell him that he had a Constitutional right to have a lawyer before making any statements, but he did not have to say anything, but that anything he did say could be used against him." The testimony of the agent and of appellant was contradictory. The trial court chose to believe the agent. We accept the trial court's findings.

Thirdly, the main thrust of this appeal is that the statements complained of were given during a period of unlawful detention proscribed by Rule 5(a) of the Federal Rules of Criminal Procedure.

■ Rule 5(a) requires that an arresting officer making an arrest with or without a warrant shall take the person arrested before the nearest available commissioner or committing magistrate "without unnecessary delay." The United States Supreme Court, in applying the rule, has made it abundantly clear that if an arrested person makes an incriminating statement or gives a confession after an arresting officer has failed to comply with Rule 5(a), the statement or confession is not admissible in evidence against the accused. This result obtains without regard to the statement's voluntariness. Mallory v. United States, 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479; Upshaw v. United States, 335 U.S. 410, 69 S.Ct. 170, 93 L.Ed. 100; United States v. Mitchell, 322 U.S. 65, 64 S.Ct. 896, 88 L.Ed. 1140, rehearing denied, 322 U.S. 770, 64 S.Ct. 1257, 88 L.Ed. 1595; McNabb v. United States, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819, rehearing denied, 319 U.S. 784, 63 S.Ct. 1322, 87 L.Ed. 1727; Walton v. United States, 10 Cir., 334 F.2d 343.

■■ The rule was promulgated in pursuance of the federal court's supervisory power over federal prosecutions. It is not a Constitutional prohibition. It applies only to federal officials and an arrest under federal law. It has no application to an arrest made under state law. Swift v. United States, 10 Cir.,

314 F.2d 860. Here, appellant was arrested by state police and incarcerated by the state for suspicion of having violated a state law. His first physical contact with federal authorities was the visit by Agent Bevans. There was no unnecessary delay in getting appellant before a commissioner after Agent Bevan's interview. That interview at Golden ended sometime between 11:30 a. m. and 12:00 noon on October 26. A federal complaint was filed with the U. S. Commissioner in Denver the next day—on the 27th—and an arrest warrant was simultaneously issued. Appellant was taken before the Commissioner on the same date.

Appellant supports his contention of unnecessary delay by theorizing that there existed between the state and federal authorities a "working arrangement". His claim is that the state detained appellant for the benefit of the federal government. This sort of collaboration was found to exist and was condemned in Anderson v. United States, 318 U.S. 350, 63 S.Ct. 599, 87 L.Ed. 829. Appellant points out that he was never charged with a state crime, that the State reported the description of the car and license number to the F.B.I. and provided accommodations for the F. B.I. to interrogate him. Therefore, contends appellant, he was apprehended and held, according to a "working arrangement", for the benefit of federal authorities. Appellant's contention that there was an unlawful working arrangement which would bring his detention by state police within the purview of Rule 5(a) was rejected by the trial court and is rejected here.

■ As pointed out by the Eighth Circuit in a case involving facts almost identical to those of the one at bar, "A bare suspicion of a 'working arrangement' will not justify reversing the decision of the District Court which had the benefit and advantage of hearing the live testimony and observing the demeanor of the witnesses." Young v. United States, 8 Cir., 344 F.2d 1006, 1010. Judge Mehaffy also observed in

that case that " * * * it is more or less common practice for a state agency to refrain from prosecution in Dyer Act cases when the federal authorities determine to proceed." Supra, 1009. So the fact that no state charges were lodged against this appellant is of no consequence. The state is fully justified in calling on the superior facilities and communication network of the federal government to ascertain the identity of an out-of-state. car. It was for that reason the description of the car and license was given to the F.B.I. officials —it was not done in pursuance of some preconceived "working arrangement" to aid the federal government in prosecution of federal crimes. The mere fact that the state and federal officials are investigating the same suspect and cooperating to solve a crime does not make one the agent of the other.

▪ As stated by this court in Walton v. United States, supra, 334 F.2d at 346, "There is no hard and fast rule as to what constitutes unnecessary delay. Each case must be determined on its own facts." Citing Pixley v. United States, 10 Cir., 220 F.2d 912. On the facts of the case at bar we determine there was no unnecessary delay committed by federal officers in producing appellant before a commissioner. There was no violation of Rule 5(a).

Appellant raises an issue which is allied to the Escobedo-voluntariness inquiry. The substance of this contention is that he was psychologically coerced into making the statements of which he now complains. He urges the court to consider his youthfulness, his lack of knowledge of the law and the fact that. the F.B.I. Agent pointed out the discrepancy between his first statement—the exculpatory statement—and that which Bennetto gave. Appellant further contends that the latter technique was coercive in nature when considered with the other facts and caused him to make the inculpatory statement and because of the above allegations, his rights under Amendment V to the United States Constitution were vio-

lated by the trial court's admitting into evidence an involuntary confession. We have adequately dealt with these contentions elsewhere in this opinion. Suffice it to say, here, that appellant's statements were voluntarily made and he was given a fair hearing on that issue; despite his youth, the trial court found, and we agree, that he made an intelligent waiver of counsel, and that th eactions of the F.B.I. agent did not violate appellant's rights under the Constitution.

Affirmed.