**Harry GROSS, Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

**No. 20994.**

United States Court of Appeals
District of Columbia Circuit.

Argued Oct. 16, 1967.

Decided Nov. 16, 1967.

Petition for Rehearing En Banc
Denied Jan. 30, 1968.

Mr. Edgar H. Martin, Washington, D. C., with whom Mr. J. Patrick Hickey,

Washington, D. C. (both appointed by this court), was on the brief, for appellant.

Mr. Richard L. Braun, Attorney, Department of Justice, with whom Mr. David G. Bress, U. S. Atty., and Messrs. Frank Q. Nebeker and Victor W. Caputy, Asst. U. S. Attys., were on the brief, for appellee.

Before PRETTYMAN, Senior Circuit Judge, and WRIGHT and LEVENTHAL, Circuit Judges.

PRETTYMAN, Senior Circuit Judge:

Appellant was convicted by a jury in the United States District Court of the crimes of murder in the second degree and robbery. The question posed on the appeal is whether a written confession admitted in evidence upon the trial was obtained in violation of Rule 5(a) of the Federal Rules of Criminal Procedure, or otherwise in violation of the constitutional or statutory rights of the accused.

In Mallory v. United States [1] a rape was committed late one afternoon in the basement of an apartment house. Police officers quickly ascertained that, although the wooden steps down to the basement ordinarily creaked when used, no creaking noise was heard immediately prior to the rape. The janitor, his wife, two grown sons, a younger son, and Mallory, who was the janitor's half-brother, occupied the basement apartment. Mallory and his two grown nephews immediately became suspect. Mallory was found and arrested about two-thirty the following afternoon and was taken, with the two nephews, to the police precinct station. After some interrogation the three consented to take polygraph tests. Only one machine and operator being available, these tests were administered separately to the three. Mallory was the third in order, and his test began at about 8:30 p. m. Meantime Mallory just sat around. The test having indicated to the police officers that Mallory was not speaking truthfully, interrogation was resumed.

1. 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479 (1957).

At 9:30 p. m. Mallory admitted his guilt. The confession was reduced to writing and signed about 12:30 a. m. He was taken before a committing magistrate the next morning. The time between his apprehension and his admission of guilt was about seven hours, and another three hours elapsed before the written confession was signed.

Addressing itself to the foregoing facts the Supreme Court held that Rule 5(a) had been violated. The Court deemed the combination of the detention, the purpose, and the interrogation to constitute a violation of the Rule. It said, *inter alia:*

> "The arrested person may, of course, be 'booked' by the police. But he is not to be taken to police headquarters in order to carry out a process of inquiry that lends itself, even if not so designed, to eliciting damaging statements to support the arrest and ultimately his guilt." [2]

In the case at bar the body of an elderly woman who had been strangled to death was discovered at about 9:30 a. m. Circumstances indicated that the perpetrator had been permitted access to the house. A number of employees met this description, and the police began an interrogation of them. Our appellant, Gross, was one of this number. His mother was the victim's maid, and he had himself done several days' painting for her in the house. Failing to locate Gross the day the crime was discovered, four police officers went to his residence at 5:30 a. m. the following morning, two officers approaching the front and two stationing themselves at the rear entrance. Gross, being aroused in his bedroom, was requested to dress and to accompany the officers downtown to the precinct. There questioning began about 7:20 a. m. Gross repeatedly refused to submit to a polygraph test but finally consented. Three such tests were given, beginning at 9:40 a. m., the final one concluding about 10:14 a. m. At the conclusion of the tests the operator, being then convinced of Gross's guilt, discussed with his superior officer the interrogation technique to be used in order to obtain a confession. Interrogation was resumed, and at about 11:30 a. m. Gross confessed. The confession was reduced to writing and signed about 1:15 p. m. He was taken before a committing magistrate about 2:20 p. m. The time lapse between his apprehension and his oral confession was six hours, and another two hours elapsed before the written confession was signed. A total of nine hours elapsed between apprehension and presentment to the magistrate.

The facts thus briefly outlined place this case precisely in the mold of *Mallory,* and we hold that the rule there laid down applies here.

■ The Government argues that Rule 5(a) does not apply, because the interview eventually resulting in the statements was nothing more than a routine effort by the police to eliminate suspects. This may well have been true up to a point, as it was in *Mallory.* But at least by the time the polygraph tests were concluded Gross had become the prime suspect. Thereafter the police avowedly were endeavoring to obtain a confession. At that point Rule 5(a) came into play, and Gross should then have been taken before a magistrate. It was mid-morning; presumably the courts were in session and magistrates were on the bench.

The opinion of the Supreme Court in *Miranda* [3] reinforces the conclusion that this confession was inadmissible upon the trial.

Reversed and remanded for a new trial.

2. *Id.* at 454, 77 S.Ct. at 1359.

3. Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).