**James Anthony THOMAS, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 9812.**

United States Court of Appeals Tenth Circuit.

May 2, 1968.

John J. Mullins, Jr., of Gorsuch, Kirgis, Campbell, Walker & Grover, Denver, Colo., for appellant.

Richard T. Spriggs, Asst. U. S. Atty., Denver, Colo., (Lawrence M. Henry, U. S. Atty., Denver, Colo., with him on the brief), for appellee.

Before PICKETT, SETH and HICKEY, Circuit Judges.

PICKETT, Circuit Judge.

Appellant Thomas was convicted on a 2-count indictment charging him with passing and uttering United States Postal Money Orders, knowing them to be

falsely made, forged and counterfeited, in violation of 18 U.S.C. § 500. He was sentenced to imprisonment for a term of five years on each count, to run concurrently. The only issue presented on this appeal is the denial of a motion to suppress evidence obtained through an alleged illegal search and seizure, and oral statements of the accused made prior to an appearance before a United States Commissioner, or other magistrate, to be fully advised of his Constitutional rights.

The material facts may be summarized. On January 24, 1967 there was an armed robbery of a United States Postoffice in Denver, Colorado, in which 290 blank forms of postal money orders were taken. Shortly thereafter a money order on one of the stolen forms was endorsed by Thomas as payee and presented to a local bar in Denver for payment of the sum of $100.00. A second money order was cashed in the same manner by Thomas at a grocery store.[1] Thomas was accompanied by Paul Padilla when he cashed each of the money orders. Padilla was a co-defendant and was also found guilty by a jury.

On February 1, 1967, Postal Inspector Whitmore, accompanied by a Denver policeman, located Thomas at his living quarters where he was advised that Whitmore desired to question him concerning the postal money orders which had been cashed. The officers did not have a warrant, and no formal arrest was made at the time, but Thomas, at the request of

Whitmore, proceeded to the Denver police headquarters with them for questioning. At the hearing on a motion to suppress, Whitmore testified that after arrival at headquarters, and before any interrogation took place, Thomas was fully advised of his rights, including the right to remain silent, and to counsel; that Thomas indicated a desire to cooperate and signed a waiver of these rights[2]; that prior to the execution of the waiver Thomas had been orally advised of the rights referred to in the written waiver; that thereafter Thomas told him that Padilla had filled out the money orders described in the information, and that he had endorsed and cashed them. Thomas also told him that he knew where there was a large number of blank money order forms; that Thomas agreed to take the officers to the place where the money orders were located, and at about 4:30 P.M. Whitmore, Thomas, and three Denver policeman left police headquarters and proceeded to the place designated by Thomas.

At the direction of Thomas, the officers, including Whitmore, proceeded to 4442 Mariposa Way in Denver, where the Montoya family resided. Mrs. Montoya responded to a knock on the door by Thomas. The officers forced their way into the home without a warrant, and after considerable persuasion Mrs. Montoya executed a consent to a search of the premises. In an unexpected location the officers found a large number of the sto-

---

1. No contention is made that either of the money orders was legally issued by a United States Postoffice.

2. This instrument read:

"Before we ask you any questions, you must understand your rights.

You have a right to remain silent.

Anything you say can be used against you in court.

You have the right to talk to a lawyer for advice before we ask you any questions and to have him with you during questioning.

If you cannot afford a lawyer, one will be appointed for you before any questioning if you wish.

If you decide to answer questions now without a lawyer present, you will still have the right to stop answering at any time. You also have the right to stop answering at any time until you talk to a lawyer.

WAIVER OF RIGHTS

I have read this statement of my rights and I understand what my rights are. I am willing to make a statement and answer questions. I do not want a lawyer at this time. I understand and know what I am doing. No promises or threats have been made to me and no pressure or coercion of any kind has been used against me.

Signed: James Anthony Thomas."
Witness W. B. Whitmore.

len money order forms. It is admitted that Thomas did not reside on these premises and had no possessory interest therein or right to be on the property. Mrs. Montoya testified that she did not know him. The trial court refused to suppress the evidence seized in the search upon the ground that Thomas was not an "aggrieved person" within the meaning of Rule 41(e) F.R.Crim.P.

It is argued that by analogy, the rule in Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 is applicable. In the Jones case the accused was lawfully upon the premises when the officers entered and made the search, seizing property belonging to Jones. While the Supreme Court held that Jones was an "aggrieved person", it stated that the person challenging the search must "establish, that he himself was a victim of an invasion of privacy." [3] See also Elbel v. United States, 10 Cir., 364 F.2d 127, cert. denied 385 U.S. 1014, 87 S.Ct. 726, 17 L.Ed.2d 550. In Sumrall v. United States, 10 Cir., 382 F.2d 651, 655, we said:

"A person aggrieved within the meaning of Rule 41(e) is one who has himself been the victim of an unlawful invasion of his own privacy."

Woodring v. United States, 10 Cir., 367 F.2d 968 is to the same effect. There was no invasion of Thomas' privacy and he was not an "aggrieved person" within the rule of the Jones case or Villano v. United States, 10 Cir., 310 F.2d 680.

It is next contended that the arresting officers failed to take Thomas before the nearest available United States Commissioner without unnecessary delay, as required by Rule 5(a) F.R. Crim.P.; that consequently the incriminating statements were not admissible in evidence against him. We have said that "The manifest purpose of 5(a) is to make sure that an accused person is fully advised of all of his constitutional rights by a judicial officer—not' an enforcement officer—before he makes any incriminating statement." Coyote v. United States, 10 Cir., 380 F.2d 305, 308, cert. denied 389 U.S. 992, 88 S.Ct. 489, 19 L.Ed.2d 484. See also, Mallory v. United States, 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed. 2d 1479; Wheeler v. United States, 10 Cir., 382 F.2d 998; Gregory v. United States, 10 Cir., 364 F.2d 210, cert. denied 385 U.S. 962, 87 S.Ct. 405, 17 L.Ed.2d 307. But this does not mean that every incriminating statement made by an accused after an arrest and prior to appearing before a United States commissioner is inadmissible. As we said in Walton v. United States, 10 Cir., 334 F.2d 343, 346, cert. denied, Conley v. United States, 379 U.S. 991, 85 S.Ct. 706, 13 L.Ed.2d 612:

"There is no hard and fast rule as to what constitutes unnecessary delay. Each case must be determined on its own facts."

If, however, in any case the delay is for the purpose of extracting a confession or incriminating statements, there is a violation of Rule 5(a) and the evidence is inadmissible. Mallory v. United States,

---

3. In Jones v. United States, 362 U.S. 257, 261, 80 S.Ct. 725, 731, referring to Rule 41(e), F.R.Crim.P., the Supreme Court said:

"In order to qualify as a 'person aggrieved by an unlawful search and seizure' one must have been a victim of a search or seizure, one against whom the search was directed, as distinguished from one who claims prejudice only through the use of evidence gathered as a consequence of a search or seizure directed at someone else. Rule 41(e) applies the general principle that a party will not be heard to claim a constitutional protection unless he 'belongs to the class for whose sake the constitutional protection is given.' People of State of New York ex rel. Hatch v. Reardon, 204 U.S. 152, 160, 27 S.Ct. 188, 51 L.Ed. 415. The restrictions upon searches and seizures were obviously designed for protection against official invasion of privacy and the security of property. They are not exclusionary provisions against the admission of kinds of evidence deemed inherently unreliable or prejudicial. The exclusion in federal trials of evidence otherwise competent but gathered by federal officials in violation of the Fourth Amendment is a means for making effective the protection of privacy."

supra; Nez v. United States, 10 Cir., 365 F.2d 286. Although there is some evidence to the contrary, it appears that Thomas was taken to the Denver police headquarters at about 4:30 on the afternoon of the day of his arrest. Postal Inspector Whitmore testified that Thomas admitted that he endorsed the money orders, and requested the officers to locate Padilla for the purpose of exonerating Thomas from any responsibility for the cashing of the money orders. It was at the request of Thomas that the officers accompanied him to the Montoya home to find Padilla and other stolen money order forms. According to Thomas' testimony, they "stayed out there until dark" and returned to the jail at night. No United States commissioner was available after 4:30 in the afternoon. When a commissioner was available the next day Thomas was taken before him. There is nothing in the record indicating that the delay was for the purpose of extracting incriminating admissions from the accused or of taking unfair advantage of him. We conclude that there was no unnecessary delay as contemplated by Rule 5(a). See, Walton v. United States, supra; Zamora v. United States, 10 Cir., 369 F.2d 855, cert. denied 386 U.S. 913, 87 S.Ct. 863, 17 L.Ed.2d 785; Dillon et al. v. United States, 10 Cir., 391 F.2d 433.

Relying upon Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, and Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977, Thomas sought to suppress the statements made by him to the officers because he was not advised of his constitutional rights prior to the time the statements were given. At an evidentiary hearing upon the motion to suppress, Inspector Whitmore testified that the warning, as set forth in F.N. 2 hereof, was given at police headquarters before Thomas was interrogated in any manner and before any admissions were made by him. Thomas testified that the warning was given after he and the officers had returned from the trip to the Montoya home, and subsequent to the statements. The court found that "the warning was given prior to going to the Montoya residence and the signing of the statement was done at that time." The time and place of the warning was a question of fact; the court's finding is adequately supported by the evidence and not clearly erroneous. Cf. Villano v. United States, supra; Coyote v. United States, supra.

Affirmed.