**UNITED STATES of America, Plaintiff-Appellee,**

**v.**

**Garry M. CHADWICK, Defendant-Appellant.**

**No. 144–68.**

United States Court of Appeals Tenth Circuit.

Aug. 19, 1969.

---

18. See Carroll v. Frontera Compania Naviera, *supra*, at footnote 15.

John A. Babington, Albuquerque, N. M. (John Quinn, U. S. Atty., with him on brief), for plaintiff-appellee.

Douglas T. Francis, Albuquerque, N. M., for defendant-appellant.

Before MURRAH, Chief Judge, and LEWIS and HOLLOWAY, Circuit Judges.

MURRAH, Chief Judge.

Appellant Garry M. Chadwick was convicted at jury trial for violation of the Dyer Act, 18 U.S.C. § 2311. On appeal, he first contends that a federal officer failed to arraign him before the nearest available United States Commissioner "without unnecessary delay", as required by Rule 5(a),[1] Fed.R.Crim.P., and that incriminating statements made to the federal officer during the alleged delay were consequently inadmissible.

Following the explicit teachings of McNabb v. United States, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819 (1943); Upshaw v. United States, 335 U.S. 410, 69 S.Ct. 170, 93 L.Ed. 100 (1948); and Mallory v. United States, 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479 (1957), it has been repeatedly asserted that the purpose of Rule 5(a) is to prevent prearraignment detention of an arrested person for the purpose of securing a confession and to have such person fully advised of his rights by a

---

1. Rule 5. Proceedings before the Commissioner

   (a) Appearance before the Commissioner. An officer making an arrest under a warrant issued upon a complaint or any person making an arrest without a warrant shall take the arrested person without unnecessary delay before the nearest available commissioner or before any other nearby officer empowered to commit persons charged with offenses against the laws of the United States. When a person arrested without a warrant is brought before a commissioner or

other officer, a complaint shall be filed forthwith.

   (b) Statement by the Commissioner. The commissioner shall inform the defendant of the complaint against him of his right to retain counsel and of his right to have a preliminary examination. He shall also inform the defendant that he is not required to make a statement and that any statement made by him may be used against him. The commissioner shall allow the defendant reasonable time and opportunity to consult counsel and shall admit the defendant to bail as provided in these rules.

judicial, instead of an enforcement, officer.[2]

Courts have, however, generally recognized an exception to the applicability of Rule 5(a) to arrested persons in state custody for the simple reason that such persons cannot be conveniently arraigned while in state custody.[3] Interviews of persons in state custody by federal officers have been permitted and extrajudicial statements made during such interviews have been generally held admissible, provided, of course, they are otherwise constitutionally admissible, see Thomas v. United States supra, and provided also that the interviews and resulting confessions are not in pursuance of a collusive "working arrangement"[4] between state and federal officers whereby the salutary purposes of Rule 5 are subtly circumvented. If, from an objective appraisal of the surrounding circumstances, it appears that an arrested person is detained in state custody for the purpose of allowing federal officers to obtain a confession before he is taken to a commissioner for arraignment in accordance with Rule 5, the confession is ipso facto inadmissible.[5]

Our facts tell a familiar story. Chadwick was stopped at approximately 11:30 o'clock, Saturday night, March 2, 1968, in Gallup, New Mexico, by a state policeman because his car's license plates were expired. The state officer took Chadwick to the sheriff's office and issued a citation for expired license plates. When Chadwick could not produce any evidence of ownership of the car, the state officer, as was his "custom" in cases like these, notified FBI Agent Walton about 12 midnight that he had stopped a car that he "might be interested in." Agent Walton arrived at the Sheriff's office about thirty minutes later, Sunday morning, and the state officer, in his own words, "turned the case over to Walton." Chadwick was taken before the Justice of the Peace, who found him guilty of driving with expired license plates and sentenced him to five days in the county jail when he could not pay the fine. It is not clear from the record whether Agent Walton was present before or during this hearing, but immediately thereafter he proceeded to question him about the ownership of the car, having identified himself and given the Miranda warnings. Chadwick explained

2. See Mallory v. United States, supra; Thomas v. United States, 394 F.2d 247 (10th Cir. 1968); Wheeler v. United States, 382 F.2d 998 (10th Cir. 1967); Coyote v. United States, 380 F.2d 305 (10th Cir. 1967), cert. den. 389 U.S. 992, 88 S.Ct. 489, 19 L.Ed.2d 484; Gregory v. United States, 364 F.2d 210 (10th Cir. 1966), cert. den. 385 U.S. 962, 87 S.Ct. 405, 17 L.Ed.2d 307; Walton v. United States, 334 F.2d 343 (10th Cir. 1964), cert. den. Comley v. United States, 379 U.S. 991, 85 S.Ct. 706, 13 L.Ed.2d 612; Greenwell v. United States, 119 U.S.App. D.C. 43, 336 F.2d 962 (1964), cert. den. 380 U.S. 923, 85 S.Ct. 921, 13 L.Ed.2d 807 (1965); Ricks v. United States, 118 U.S.App.D.C. 216, 334 F.2d 964 (1964); United States v. Middleton, 344 F.2d 78 (2d Cir. 1965); United States v. Taylor, 374 F.2d 753 (7th Cir. 1967); See generally United States v. Broadhead (7th Cir.) 413 F.2d 1351 and Note, 68 Yale L.J. 1003 (1959).

3. See Bond v. United States, 397 F.2d 162 (10th Cir. 1968); Chapman v. United States, 397 F.2d 24 (10th Cir. 1968);

Butterwood v. United States, 365 F.2d 380 (10th Cir. 1966), cert. den. 386 U.S. 937, 87 S.Ct. 960, 17 L.Ed.2d 810; Swift v. United States, 314 F.2d 860 (10th Cir. 1963); Jones v. United States, 119 U.S.App.D.C. 284, 342 F.2d 863, 877 ftnt. 5 (1964); Young v. United States, 344 F.2d 1006 (8th Cir. 1965), cert. den. 382 U.S. 867, 86 S.Ct. 138, 15 L.Ed.2d 105 (1965).

4. See Anderson v. United States, 318 U.S. 350, 63 S.Ct. 599, 87 L.Ed. 829 (1943); Butterwood v. United States, supra; United States v. Coppola, 281 F.2d 340 (2d Cir.) aff'd per curiam 365 U.S. 762, 81 S.Ct. 884, 6 L.Ed.2d 79 (1961); Barnett v. United States, 384 F.2d 848 (5th Cir.); United States v. Hindmarsh, 389 F.2d 137 (6th Cir.), cert. den. 393 U.S. 866, 89 S.Ct. 150, 21 L.Ed.2d 134.

5. Since the defendant in our case was charged, tried and convicted prior to the enactment of the Omnibus Crime Control and Safe Streets Act of 1968, Title II, we have no occasion to consider the relevancy of 18 U.S.C. § 3501.

that the car had been leased from a Mr. Undsinger at the Frolic Bar in San Francisco and that "he had nothing to hide." Agent Walton left to check his story.

On Monday morning, March 4, Walton received an official report that the car had been stolen. He again interviewed Chadwick, and after informing him of his rights, confronted him with the fact that he knew the car was stolen. Chadwick then freely confessed in detail how he stole and transported the car. On the morning of the following day, Tuesday, March 5, after receiving authorization from the United States Attorney to prosecute, Agent Walton filed a Dyer Act complaint and took Chadwick to the United States Commissioner, a block and a half away, where he was apparently informed of his rights in accordance with Rule 5(b).

■■■ Active cooperation between state and federal authorities in the enforcement of criminal laws, especially involving moving vehicles, should be encouraged. As Judge Hill put it in Butterwood, supra, 365 F.2d at p. 385: "The state is fully justified in calling on the superior facilities and communication network of the federal government to ascertain the identity of an out-of-state car." So, too, federal authorities are entitled to rely upon state authorities for information and cooperation relating to federal violations. See United States v. Coppola, supra. In the very nature of interstate crime, cooperation between local and federal authorities is essential and desirable. The courts have been careful not to unduly interfere with cooperative activities of state and federal

law enforcement officers; [6] indeed, only one case has come to our attention wherein a court has excluded a pre-arraignment confession because of an improper working arrangement between state and federal authorities.[7]

■■■ The burden is on the petitioner to show that state custody was designingly utilized to circumvent Rule 5(a). See United States of America v. Rose (6th Cir.) 415 F.2d 742. But the law will not condone a subterfuge; neither will it ignore realities. Though the working arrangement be proper, the mere fact of state custody should not in and of itself excuse compliance with Rule 5(a). We do not understand the case law to say that because a confession obtained pursuant to an improper working arrangement is inadmissible under Anderson, that Rule 5(a) (the embodiment of McNabb) is inapplicable simply because and so long as an arrested person is in state custody. When the reason for the inapplicability of a rule is nonexistent, the rule should be applied. Rule 5(a) should surely be honored, unless for some reason compliance is prevented by state custody. The spirit and purposes of the rule require no less.

■■■ We may take judicial notice that federal officers do not patrol the interstate highways or the streets enroute; there are no federal jails in the states; and committing magistrates are conveniently available. In a typical case, as it comes to us, the first detention is by local authorities on a state or local charge. As here, the federal officer is immediately notified when the local authorities have reasonable grounds to believe that a federal offense has been

---

6. The courts have been primarily concerned lest an overbroad construction of the Anderson "working arrangement" unduly inhibit law enforcement. See Barnett v. United States, supra, and cases cited; Butterwood v. United States, supra; Easley v. United States, 333 F.2d 75 (10th Cir.); Cram v. United States, 316 F.2d 542 (10th Cir.); Swift v. United States, supra; United States v. Hindmarsh, supra.

7. See United States v. Tupper, 168 F.Supp. 907 (W.D.Mo.1958). "Where a custom and practice is established that local officers invariably release accused persons arrested by them to federal officers for prosecution, and no state charge is generally made against such accused, statements and confessions taken under such circumstances clearly fall within the ambit of Rule 5(a) * * * ". See also J. Waterman's dissent in United States v. Coppola, 281 F.2d 340, 345 (2nd Cir.).

committed. As in our case, the state prisoner is customarily turned over to the federal authorities for investigation and, upon probable cause, for arraignment before a commissioner in compliance with Rule 5(a). In no case coming to our attention have the state authorities ever declined to freely surrender one in state custody, with or without charge, to be duly arraigned on a federal complaint. Under this prevailing practice, there is no impediment to the application of Rule 5(a).[8] And in this typical case, there is no suggestion that Walton was not free to take Chadwick before the Commissioner a' block and a half away at any time after the case was turned over to him; indeed, as free as if he himself had made the arrest on the streets of Gallup and had taken Chadwick to the county jail.

Rule 5(a) speaks in terms "of an arrested person" and no one has a constitutional or Rule 5(a) right to be arrested. Enforcement officers are under no duty to make an arrest even in the face of probable cause. See Hoffa v. United States, 385 U.S. 293, 310, 87 S.Ct. 408, 17 L.Ed.2d 374. The arrest of an underling may very well frustrate the investigation and ultimate arrest of the ringleader. And we will not second guess enforcement officers in their arduous task of investigating crime and detecting criminals. Our function is to make sure that the investigative procedures are conducted within the framework of our accusatorial and not an inquisitional process.[9]

Persistent interrogation of a person in state custody after probable cause for an arrest on a federal charge until a confession has been obtained may very well, indeed, raise a factual presumption that state custody was utilized for the purpose of obtaining the confession before taking the accused to a magistrate in compliance with Rule 5(a). In such circumstances state custody becomes constructive federal custody for the purposes of the rule. See United States v. Rose, supra. The question then is whether arraignment was unnecessarily delayed. But we do not believe the presumption is justified in the facts of our case. Rather, we think Walton proceeded prudently and with due regard to the requirements of Rule 5(a).

Some interrogation to determine probable cause is certainly proper, and reasonable time taken to check an alibi is permissible.[10] In Heideman v. United States, 104 U.S.App.D.C. 128, 259 F.2d 943, 945–946, Chief Justice Burger, when he was a circuit judge, announced a standard of police conduct which seems entirely apposite to cases like ours:

"At the outset, the police, assuming they have probable cause for arrest, are entitled to ask the arrested suspect

8. The law books are full of cases demonstrating this common practice. The following cases from our circuit alone are illustrative: Coyote v. United States, supra; Sciberras v. United States, 380 F.2d 732 (10th Cir.); Morales-Gomez v. United States, 371 F.2d 432 (10th Cir.); Butterwood v. United States, supra; Gregory v. United States, supra; Cram v. United States, supra; Swift v. United States, supra.

9. Mr. Justice Frankfurter put our problem in proper perspective in Culombe v. Connecticut, 367 U.S. 568, 586–587, 81 S.Ct. 1860, 1870, 6 L.Ed.2d 1037, when he said, "[B]ecause it is the courts which are charged, in the ultimate, both with the enforcement of the criminal law and with safeguarding the criminal defendant's right to procedures consistent with fundamental fairness, the problem of reconciling society's need for police interrogation with society's need for protection from the possible abuses of police interrogation decisively devolves upon the courts, particularly in connection with the rules of evidence which regulate the admissibility of extrajudicial confessions."

10. See Mallory v. United States, supra; Hollingsworth v. United States, 321 F.2d 342 (10th Cir.); Walton v. United States, supra; Metoyer v. United States, 102 U.S.App.D.C. 62, 250 F.2d 30; Goldsmith v. United States, 107 U.S.App.D.C. 305, 277 F.2d 335; Gross v. United States, 129 U.S.App.D.C. 266, 393 F.2d 667.

what he knows about a crime. If he denies knowledge, they are entitled to state to him what evidence they have and ask whether he cares to comment upon it. A strong circumstantial case which would satisfy the U. S. Commissioner, prima facie, might well be explained away by a suspect who knew what information the police relied on —hence leading to no charge being made. If the suspect continues to deny knowledge, the police are entitled to conclude the interview by saying, in effect, 'Do you have ànything further to tell us, or do you just want to let it stand the way it is?' Such questions as these the police may ask— indeed *should* ask; it is only when the questioning crosses into what can be termed 'grilling,' or is continued beyond the brief period allowed, that the resulting confession may be held inadmissible."

Applying these standards to our case, when at the first interview Walton asked Chadwick about the ownership of the car, he was given a plausible explanation. Without pursuing the matter further, Walton left to check Chadwick's story and learned that the car had been stolen. At that stage, Walton thought he had probable cause to believe that Chadwick had stolen the car and could have taken him before a commissioner for complaint and arraignment. But we must not cast enforcement officers into a strait jacket and we do not think it was improper or unnecessary delay to confront Chadwick with the information for further explanation. When Walton did, Chadwick immediately confessed. There was no grilling or other coercion. It was simply an example of efficient and enlightened law enforcement. Though he was not taken before the commissioner until the morning of the next day, Walton was waiting for authorization from the United States District Attorney, and the subsequent delay was not for the purpose of questioning or in any way taking advantage of Chadwick. See Mitchell v. United States, 322 U.S. 65, 64 S.Ct.

896, 88 L.Ed. 1140 (1944); Chapman v. United States, supra; Thomas v. United States, supra; Jackson v. United States, 114 U.S.App.D.C. 181, 313 F.2d 572.

Chadwick next contends that the trial court erred in admitting statements made by him to the state policeman when he was first stopped because the officer had not given the Miranda warnings. The facts show simply that after stopping Chadwick because his license plates were expired, the officer examined the car registration papers and asked why they were expired. Chadwick replied that the car was leased and that the lessor had failed to send him the current registration. This statement, in response to entirely permissible on-the-scene questions, was clearly outside Miranda. See Sablowski v. United States, 403 F.2d 347 (10th Cir.).

The final asserted error is the trial court's refusal to given an instruction having the effect of submitting to the jury the adequacy of the Miranda warnings. The trial court, instead, followed the dictates of Coyote v. United States, supra, determined compliance with Miranda as a matter of law, and then instructed the jury on voluntariness.

We affirm the judgment.

LEWIS, Circuit Judge, with whom HOLLOWAY, Circuit Judge, joins (concurring specially).

This judgment is properly affirmed for, as it appears from Chief Judge Murrah's clear statement of the factual background, appellant's rights have in no way been violated and the trial court committed no error. And, were it necessary as a legal premise for disposition of this case, I would have no hesitancy in concurring in many of the academic views expressed in the principal opinion as the proper correlation between the rule of *Miranda* and the mandate of Rule 5(a). Certain it is that state custody cannot be used as a subterfuge to defeat federal rights. But to the extent that the principal opinion

creates a presumption that Rule 5(a) is violated by continued or "persistent" interrogation of a person in state custody after probable cause exists for federal arrest, I must deny the existence of such a legal presumption and the concomitant legal fiction that state custody becomes federal custody.

Rule 5(a) by its very wording is triggered by the fact of arrest, not by the existence of probable cause to make an arrest. The "spirit" of the rule is contained within its language and does not warrant judicial extension to the legislative field unauthorized by the limited delegation of legislative rights to the Supreme Court through its statutory rule-making power.