**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAR 31 1997**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

ROBERT HENDERSON, JR.,

    Petitioner-Appellant,

v.

ROBERT TANSY,

    Respondent-Appellee.

No. 95-2206
(D.C. No. CIV-92-5-JC)
(D. New Mexico)

**ORDER AND JUDGMENT**[*]

Before **SEYMOUR**, **LOGAN** and **LUCERO**, Circuit Judges.

Petitioner Robert Henderson, Jr. was convicted in New Mexico state court of murder, criminal sexual penetration, kidnapping, burglary and larceny and sentenced to death. On direct appeal, the New Mexico Supreme Court reversed petitioner's death sentence; on remand he received a life sentence. Petitioner exhausted his state court remedies before filing this 28 U.S.C. § 2254 petition raising fifteen issues. The district court dismissed the petition on its merits and denied a certificate of probable cause to

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. This court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

appeal. We have examined the voluminous record. Although we deny relief, we have determined that petitioner has demonstrated a sufficient showing of a denial of a federal right to warrant granting a certificate of appealability in order to discuss the merits of the three claims petitioner briefed and pressed in the oral argument we allowed on appeal. See Lennox v. Evans, 87 F.3d 431, 434 (10th Cir. 1996) (applying same standard to pre-AEDPA petitions as to those filed after its effective date), cert. denied, 117 S. Ct. 746 (1997).

Petitioner argues that his trial was fundamentally unfair because: (1) the prosecutor's peremptory strikes of one Native American and three Hispanic venire members violated the rule of Batson v. Kentucky, 476 U.S. 79 (1986); (2) admission of his uncounseled statements to police violated the rule of Miranda v. Arizona, 384 U.S. 436 (1966); and (3) the trial court denied him due process when it refused in camera inspection of a detective's personnel file and internal investigation.

I

Batson held that a defendant can establish a prima facie case of purposeful racial discrimination in selection of the jury in the following manner:

> [T]he defendant first must show that he is a member of a cognizable racial group, and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race. Second, the defendant is entitled to rely on the fact, as to which there can be no dispute, that peremptory challenges constitute a jury selection practice that permits those to discriminate who are of a mind to discriminate. Finally, the defendant must show that these facts and any other relevant circumstances

raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race.

Batson, 476 U.S. at 96 (citations and quotations omitted). "Once the defendant makes a prima facie showing, the burden shifts to the state to come forward with a neutral explanation" for the strike. Id. at 97. A neutral explanation is "based on something other than the race of the juror" and "[u]nless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral." Hernandez v. New York, 500 U.S. 352, 360 (1991); Purkett v. Elem, 115 S. Ct. 1769, 1771 (1995) ("a 'legitimate reason' is not a reason that makes sense, but a reason that does not deny equal protection"). The trial court then determines whether a defendant has proven purposeful discrimination. Whether a prosecutor's explanation for peremptory strikes is race neutral is a question of law, United States v. Sneed, 34 F.3d 1570, 1580 (10th Cir. 1994), but whether intentional discrimination occurred is a question of fact. United States v. Johnson, 4 F.3d 904, 913 (10th Cir. 1993), cert. denied, 510 U.S. 1123 (1994).

Petitioner contends that the prosecutor failed to articulate a race neutral explanation for striking Cynthia Parr, a Native American, when the defense raised a Batson objection during jury selection. Petitioner, a Navajo Indian, established a prima facie Batson violation because the government used a peremptory strike to remove Parr, the only Native American venire member. United States v. Joe, 8 F.3d 1488, 1498-99 (10th Cir. 1993) (use of peremptory strike of only Native American on venire raises inference of exclusion due to race), cert. denied, 510 U.S. 1184 (1994). The prosecutor,

- 3 -

however, offered a race neutral reason for the strike when he originally challenged Parr for cause on the basis of her alleged inability to vote for the death penalty.  See IX R. 1471-74 (detailed explanation of why Parr should not be on the jury).

Shortly after the trial court denied the for-cause challenge of Parr, court recessed from 11:45 a.m. until 2:00 p.m.  The prosecution exercised its peremptory strike soon after that break.  When defense counsel raised a Batson objection to the peremptory strike the prosecutor offered to state his reasons.  To this the court answered:  "There are sufficient reasons from your questioning of Ms. Parr.  I think you established more than sufficient grounds.  That is reflected on the record for the State's striking of Ms. Parr.  I see no pattern of racial motivation at this point."  Id. at 1492.  The trial court's failure to ask the prosecutor to restate reasons for striking Parr does not detract from the detailed substance of the prosecution's recent for-cause challenge.  See Hernandez, 500 U.S. at 362-63 (citing Batson) ("While a reason offered by the prosecutor for a peremptory strike need not rise to the level of a challenge for cause, the fact that it corresponds to a valid for-cause challenge will demonstrate its race-neutral character.").  Petitioner points out that the trial court misstated the Batson test as requiring a pattern of racially-motivated strikes; but such a pattern is only one possible indicator to bolster a defendant's prima facie showing.  United States v. Esparsen, 930 F.2d 1461, 1465 (10th Cir. 1991), cert. denied, 502 U.S. 1036 (1992).  The record supports the trial court's conclusion that defendant failed to prove intentional discrimination.

Petitioner also challenges the government's peremptory strikes of three Hispanic jurors as racially discriminatory. Although the defense objected to the prosecutor's peremptory strike of Parr as racially discriminatory, the record reflects that the government and trial court both understood the objection was directed only at Parr. The trial court's ruling mentioned only Parr, and defense counsel did not restate the objection to include the three Hispanic jurors. Thus, we agree with the government that defense counsel did not contemporaneously object to those strikes. Petitioner's failure to timely object is not cured by his pretrial motion requesting that the prosecutor state reasons during voir dire for exercising peremptory strikes; the trial court directed defense counsel to raise such issues at voir dire. Our review of the record reveals no plain error in upholding those peremptory strikes. See United States v. Contreras-Contreras, 83 F.3d 1103, 1104 (10th Cir. 1995) ("Batson objection must be made as soon as possible, and preferably before the jury is sworn"), cert. denied, 117 S. Ct. 259 (1996).

II

Petitioner contends that the trial court should have suppressed his incriminating statements to police officers because they were involuntary. The government must prove by a preponderance of the evidence that petitioner, who did not have counsel, voluntarily waived his right to remain silent. Miranda, 384 U.S. at 467-74 (officers must inform persons in custody that they may refuse interrogation and that they have the right to counsel); Moran v. Burbine, 475 U.S. 412, 421 (1986) (government must show that

defendant voluntarily relinquished his rights and that he was fully aware of the rights being abandoned). The trial court's factual findings are entitled to great deference, but the ultimate issue of voluntariness is a legal question. Arizona v. Fulminante, 499 U.S. 279, 287 (1991). We determine voluntariness by examining the totality of the circumstances surrounding petitioner's statements to police: the suspect's maturity, intelligence, education, mental and physical health; the length and location of the interview; whether the suspect was advised of his constitutional rights; and whether the police conduct was punitive or coercive. Withrow v. Williams, 507 U.S. 680, 693-94 (1993); Schneckloth v. Bustamonte, 412 U.S. 218, 225-27 (1973).

About one month after the murder, Albuquerque police arrested petitioner on unrelated charges. When they learned that he matched the description of the man last seen with the murder victim's suitcase, and that his fingerprints were found at the murder scene, detectives Frank Troup and Joel Olson took petitioner from the county jail and escorted him across the street to a police department interview room. The officers' testimony and petitioner's account of the encounter differ.

The officers testified as follows: They only talked with petitioner en route to tell him they wished to interview him. Upon reaching the interview room they told petitioner that he was a suspect in a murder investigation. They gave petitioner Miranda warnings and he signed a waiver of rights form and initialed each enumerated right waived. After they told petitioner that his fingerprints matched those at the murder scene, he made

- 6 -

incriminating statements that placed him at the murder scene engaging in conduct consistent with the victim's condition. Petitioner signed a permission to search form and provided body fluid and hair samples. Although petitioner agreed to give a written statement he changed his mind upon arriving at the word processing center. He then requested counsel and signed a typed refusal.

In contrast, petitioner testified that he signed a refusal to waive his rights at the outset of the interview. He claimed that Troup left the interrogation room with the signed form but returned and began threatening him with the death penalty. Petitioner said that he felt afraid and ill from alcohol withdrawal symptoms and eventually agreed to talk because the officers promised lenience if he gave a statement. Petitioner claims he signed the waiver form after giving the officers an oral statement, and denied going to the word processing area.

The trial court denied petitioner's motion to suppress his oral statements, but reopened the matter to consider his polygraph test results that might reflect on the credibility of the officers' testimony as to when petitioner first requested counsel. The trial court found that the officers' testimony was more credible than petitioner's, and discounted the results of his polygraph test. The trial court ultimately determined the statements were voluntary and denied suppression.

In arguing that he did not voluntarily waive his right to counsel before providing police with statements about the crime petitioner relies heavily on a polygraph test that indicates he requested counsel before giving the statement. He also contends that the officers' failure to record the interview and a one-day delay in his arraignment is evidence of involuntariness.

We defer to the trial court's factual findings and conclude that petitioner's statements were voluntary as a matter of law. See 28 U.S.C. § 2254(d) (trial court's factual findings presumed correct unless exception applies). Petitioner acknowledged receiving Miranda warnings at the outset of the interview, which satisfies one criteria in the totality of the circumstances analysis.

The officers denied using threats or promises to coerce petitioner to submit to interrogation. Olson testified that petitioner did not request counsel during the interview, and never complained that his alcohol withdrawal symptoms impaired his ability to think clearly and respond appropriately; petitioner admitted that he understood what was transpiring despite feeling ill. We cannot say that the polygraph examination should have weighed more heavily in the trial court's ruling. It was obtained under "friendly" circumstances and did not address other areas where petitioner's testimony differed significantly from that of the officers--notably his allegations of promised leniency and death penalty threats--nor the ultimate issue of guilt.

After the interview, petitioner wrote out his refusal to provide a signed written statement, even though the typed form stated that he requested an attorney. This supports a finding that petitioner made a conscious choice to submit to the interview but later was able to refuse to sign a written statement. Petitioner's allegations that the officers made promises and threats that overbore his will is not consistent with this conduct. United States v. Short, 947 F.2d 1445, 1450 (10th Cir. 1991), cert. denied, 503 U.S. 989 (1992).

Petitioner's personal characteristics also do not demonstrate he was particularly susceptible to improper influence. Petitioner had an arrest record and had waived his rights and voluntarily provided statements to police on other occasions, indicating a familiarity with the process and consequences of his choices. The officers interviewed petitioner in nonoppressive surroundings, without handcuffs or leg shackles, and had him in their custody for only about two hours before returning him to the county jail.

Failure of the officers to use available recording equipment to preserve an interview is not determinative. United States v. Short, 947 F.2d at 1451. The alleged delay in arraignment does not help petitioner's case; his interview concluded after expiration of the arraignment period for that day and he was arraigned the following afternoon. This delay is not unreasonable nor strong evidence of police efforts to compel an uncounseled confession, even though, as petitioner argues, the fingerprint evidence and physical description together supported probable cause for petitioner's arrest in the absence of the interview. United States v. Chadwick, 415 F.2d 167, 171 (10th Cir. 1969)

- 9 -

(officers not duty-bound to arrest suspect when probable cause established, altogether foregoing pre-arrest interrogation).

III

Petitioner contends that denial of his motion for discovery or in camera inspection of Troup's personnel file and other internal affairs records deprived him of due process and foreclosed his Fifth Amendment claim because the requested records may have contained information reflecting negatively on Troup's credibility. Petitioner appears to assert two reasons for his discovery request: that the trial court may have ruled favorably on his suppression motion if it found more credible his testimony that he requested counsel at the start of the interview, and that the requested information may have been useful in cross-examining Troup or challenging his credibility at trial. This is essentially a request for a fishing expedition into Troup's personnel file. We are not impressed by petitioner's arguments. The trial court had testimony from two officers and petitioner. It did not have to resolve a "swearing match" solely between petitioner and Troup because Olson provided similar testimony to that of Troup. Whether Troup truthfully testified that petitioner promptly waived his right to counsel was not a jury issue; the trial court determined as a matter of law that petitioner's statements to Troup and Olson were voluntary.

We also note that petitioner's defense was lack of intent and accident. He admitted that he lied in his interview with the officers about having breakfast and consensual sex

with the victim.  These statements, along with his multiple admissions that he beat and raped the victim, were more incriminating than his interview with Troup and Olson.  We hold that the trial court's refusal to allow petitioner to engage in a fishing expedition into Troup's personnel file and internal police department records did not deny him due process.

AFFIRMED.

Entered for the Court

James K. Logan
Circuit Judge